[Crim. No. 4062.   First Dist., Div. Two.   Oct. 16, 1962.]

THE PEOPLE, Plaintiff and Appellant, v. LESLEY ROY ALLEN, Defendant and Respondent.

Stanley Mosk, Attorney General, John S. McInerny and Edward P. O'Brien, Deputy Attorneys General, for Plaintiff and Appellant.

Richard D. Sanders and Richard E. Hawk for Defendant and Respondent.

SHOEMAKER, J.—This is an appeal by the People of the State of California from an order dismissing an information against Lesley Roy Allen.

The record reveals that after a preliminary examination of the defendants Lesley Allen and his wife, on a complaint

charging them with grand theft in violation of Penal Code, section 484, both defendants were held to answer. Thereafter, an information was duly filed by the district attorney of Contra Costa County charging both defendants with the abovementioned offense. Defendant Lesley Allen was arraigned in the superior court and moved to dismiss the information pursuant to Penal Code, section 995. Said motion to dismiss was granted.

The sole question raised by this appeal is whether the evidence presented at the preliminary hearing was sufficient to support the municipal court's finding of reasonable and probable cause to hold the defendant Lesley Allen. (*People v. Jackson* (1956) 146 Cal.App.2d 553 [303 P.2d 767].)

■ The superior court, in ruling on the motion to dismiss the information, was without power to substitute its judgment as to the weight of the evidence for that of the magistrate. "If there is some evidence to support the information, the courts will not inquire into its sufficiency. ■ Under section 995 of the Penal Code, the information will be set aside only where there is no evidence that a crime has been committed or there is no evidence to connect the defendant with a crime shown to have been committed." (*People v. Platt* (1954) 124 Cal.App.2d 123, 131 [268 P.2d 529]; also see *People v. Malki* (1960) 181 Cal.App.2d 118, 121-122 [5 Cal.Rptr. 207].)

In the case at bar, the evidence presented at the preliminary hearing established that the defendant's wife, Edith Allen, was receiving welfare payments of approximately $140 per month during 1960 and January of 1961 for the support of her four children by a previous marriage. In December of 1960, Mrs. Durkin, a Contra Costa County social worker assigned to Mrs. Allen's case, made a routine visit to the Allen home. When Mrs. Allen informed her that Mr. Allen had injured his leg, Mrs. Durkin discussed with him the possibility that he might apply for disability payments or Aid to Needy Children payments.

Thereafter, on February 8, 1961, Mrs. Allen visited Mrs. Durkin at the welfare office and told her that Mr. Allen had been injured in a fall from a horse, that he was not drawing disability payments, and that they needed help. In response to Mrs. Durkin's questions, Mrs. Allen stated that she and her husband owned no personal property other than a 1941 Chevrolet. She further stated that neither she nor her husband had disposed of any real or personal property during

the past year. After these statements had been filled in on the appropriate forms, Mrs. Allen signed an "Application for Aid to Needy Children" and a "Statement of Facts Relating to Eligibility for Aid to Needy Children."

Thereafter, the welfare payments to the Allens were increased to cover the two children of Mr. and Mrs. Allen, and Mr. Allen himself as an incapacitated father. In February and March of 1961, the Allens received a total of $639 from the County of Contra Costa. The money was paid in the form of three separate warrants which were payable to Mrs. Allen and which were endorsed by her.

In March of 1961, Mrs. Durkin placed a hold on the Allens' April check as the result of an anonymous phone call informing her that the Allens owned some horses. Mr. and Mrs. Allen then came into the welfare office and inquired why their check was being held. Mrs. Durkin informed them that the office was attempting to verify whether or not they owned horses of a value exceeding the $600 personal property limitation of the Aid to Needy Children program. Mr. and Mrs. Allen denied that they owned any horses.

On May 16, 1961, Deputy Sheriff John Van Hagen proceeded to the Allen home to serve an arrest warrant on Mr. Allen. The deputy found Mr. Allen hiding in a closet.

In addition to the evidence above summarized, there was also testimony indicating that Mr. Allen had in fact been the owner of several horses of a value in excess of $600 at the time that his wife had applied for and received financial aid from the county.

Penal Code, section 484, provides in part that "Every person . . . who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money . . . is guilty of theft." ▇▇ The essential elements of the crime of obtaining money by false pretenses are (1) an intent to defraud; (2) an actual fraud committed; (3) the use of false pretenses to perpetrate the fraud; and (4) reliance upon the fraudulent representations in parting with money or other property. (*People* v. *Caruso* (1959) 176 Cal.App.2d 272, 276 [1 Cal.Rptr. 428].)

▇▇ In the instant case, the evidence presented at the preliminary hearing was clearly sufficient to show that respondent's wife, by falsely representing that she and respondent owned no personal property other than a 1941 Chevrolet, was successful in obtaining county welfare payments to which she was not entitled. Although it is true that there was no

direct evidence indicating that Mrs. Allen acted with an intent to defraud, there was ample circumstantial evidence from which such an intent could be inferred. (See *People* v. *Caruso, supra,* at p. 278.) There can be no doubt that the prosecution sustained the burden of showing that the crime of obtaining money by false pretenses had been committed.

██ Turning next to the evidence connecting respondent with the crime, it becomes apparent that an entirely different situation is presented. It must first be remembered that respondent took no part in the discussions immediately preceding the filing of the welfare application. Neither did he sign the application itself or the ''Statement of Facts Relating to Eligibility for Aid . . . .'' Although it is true that respondent later denied owning any horses, this statement was made at a time when the welfare payments to the Allens had already been discontinued by the county. Respondent's statement, although obviously false, could certainly have induced no reliance on the part of the county and, indeed, was made at a time when the crime charged had already been completed.

Appellant concedes that respondent ''did not personally make any false representations,'' but urges that there was at least probable cause to believe that he aided and abetted his wife in the commission of the crime. In support of this contention, appellant points out that in December of 1960, Mrs. Durkin suggested to respondent that he apply for county aid. According to appellant, the very fact that respondent's wife subsequently did apply for such aid is itself evidence of a ''tacit understanding'' between respondent and his wife that they would attempt to obtain welfare payments despite the fact that they owned several horses. Appellant also asserts that respondent demonstrated a consciousness of guilt when he subsequently denied ownership of the horses and when he hid in the closet to avoid arrest.

██ In order to be an abettor, the accused must have instigated or advised the commission of the crime or been present for the purpose of assisting in its commission. He must also share the criminal intent with which the crime was committed. (*People* v. *Villa* (1957) 156 Cal.App.2d 128, 133-134 [318 P.2d 828].) ██ In the case at bar, the evidence reveals that appellant was not present when his wife misrepresented the amount of personal property which she and respondent owned. The warrants by which the welfare payments were made were all payable to and endorsed by his wife. Although it is certainly possible that respondent shared

his wife's criminal intent and instigated or advised the commission of the crime, the evidence before us does not support it. When Mrs. Durkin suggested that respondent apply for aid, there is no evidence that she informed him of the $600 personal property limitation. Neither is there any evidence that respondent had obtained county aid before, that his wife had told him of the limitation, or that he was otherwise apprised of its existence. Under these circumstances, it is entirely possible that respondent, being incapacitated, merely asked his wife to apply for county aid but was never aware that she obtained that aid only by means of false statements.

Penal Code, section 872, provides that a defendant shall be held to answer if it appears from the examination that "a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof. . . ." The phrase "sufficient cause" has been equated with "reasonable and probable cause" (*People* v. *Nagle* (1944) 25 Cal.2d 216, 222 [153 P.2d 344]) and has been held to mean "such a state of facts as would lead a man of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused." (*Rogers* v. *Superior Court* (1955) 46 Cal.2d 3, 7-8 [291 P.2d 929]; *Perry* v. *Superior Court* (1962) 57 Cal.2d 276, 283 [19 Cal.Rptr. 1, 368 P.2d 529].) In the instant case, it cannot be said that the lower court erred in concluding that the prosecution had failed to produce sufficient evidence connecting respondent with the crime charged.

Order dismissing the information is affirmed.

Kaufman, P. J., and Agee, J., concurred.