UNITED STATES of America, Plaintiff–Appellee,

v.

George Michael SHIPSEY, Defendant–Appellant.

No. 98–10199.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 14, 1999.

Decided Sept. 9, 1999.

Dennis P. Riordan, San Francisco, California, for the defendant-appellant.

Lawrence J. Leigh, Assistant United States Attorney, San Francisco, California, for the plaintiff-appellee.

Before: SCHROEDER, FLETCHER, and BOOCHEVER, Circuit Judges.

SCHROEDER, Circuit Judge:

Defendant George Michael Shipsey appeals his jury trial convictions and the sentence imposed for seven counts of theft from a pension plan subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 18 U.S.C. § 664, and two counts of money laundering, 18 U.S.C. § 1957. The convictions arose from an alleged scheme to divert funds from a construction project, on which he was the general contractor, to fund the construction of his own residence. The scheme entailed submitting to the loan servicing institution false claims of amounts owed to subcontractors from the project financing provided by four pension funds.

The dispositive issue in this appeal is whether the district court committed plain

error when it instructed the jury that it could convict Shipsey of theft if it found any wrongful taking from the pension funds, when the indictment charged only theft by false pretenses. We conclude the district court did so err and reverse both the theft convictions and the money laundering convictions, which rested upon the use of theft proceeds.

## Background

### A. The government's evidence

The government presented evidence at trial that between 1988 and 1990, Shipsey was a general contractor for a condominium project in Santa Rosa, California called Stonefield at Fountaingrove ("Stonefield"). At the same time, Shipsey was constructing for himself a 19,000 square foot mansion on Obertz Lane in Novato, California ("Obertz"). Shipsey employed many of the same subcontractors to work at both Obertz and Stonefield.

On August 23, 1988, Shipsey signed a loan agreement with First California Mortgage Company ("First Cal") to finance Stonefield's construction. Pursuant to a previously executed agreement for the sale of the loan, First Cal transferred its interest in the loan agreement to four trade union pension funds which invested $19.4 million in Stonefield on behalf of their beneficiaries. McMorgan & Company ("McMorgan") acted as the investment manager for these funds. The pension funds were all covered by ERISA and Shipsey was aware that pension funds would lend the money for the project.

The lenders did not disburse the construction loan to Shipsey in a lump sum. Shipsey would periodically prepare requests for disbursements of the loan as his subcontractors and suppliers accumulated costs on the project. First Cal would then review the draw requests to determine whether to advance the requested money. With the consent of McMorgan, First Cal would issue an advance in the form of a two party check issued to Shipsey and the appropriate subcontractor. First Cal would then seek reimbursement from the pension funds, usually supplying the draw requests as supporting documentation. If McMorgan approved of the request, funds would be transferred out of the pension funds' bank accounts to First Cal.

Despite the number of controls designed to prevent the diversion of funds, the government presented evidence that Shipsey was able to obtain over $700,000 from the pension funds that he diverted for his personal use, largely for the construction of Obertz. Shipsey allegedly accomplished the diversion of funds by making draw requests from the pension funds that disguised work done at Obertz as work done on Stonefield or that overstated the cost of work performed at Stonefield. The loan agreement required advances to be immediately used to pay bills and charges incurred in Stonefield's construction, forbidding their use for other purposes until the bills and charges were paid in full. Had Shipsey told the pension funds that he was using some of the draw money for Obertz, they would not have authorized the disbursements. In many of Shipsey's draw requests, he certified that the work and materials described in the request were for Stonefield and that the funds requested would be used to pay for the work and materials. The certifications also attested that the statements in the request were made for the sole purpose of inducing First Cal to make the advance.

### B. The Indictment

Shipsey was charged in a twenty-four count indictment with violations of 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 664 (theft from an employee benefit plan), and 1957 (engaging in monetary transactions in property derived from specific unlawful activity).

Paragraphs five through seven of the indictment described the fraudulent scheme of which Shipsey was accused. They alleged, in pertinent part:

  5. From on or about August 1, 1988 and continuing to on or about August 10, 1990, the defendant George Michael

Shipsey did knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, promises, and omissions of material facts and attempt to do so from First California Mortgage and the Pension Funds.

6. Defendant's scheme to defraud was, in outline, as follows: (a) defendant engaged certain subcontractors to do construction work at both Stonefield and Obertz; (b) in some cases George Michael Shipsey instructed the subcontractors to bill Stonefield for work done on Obertz; (c) in some cases, at defendant's request, the subcontractors made and delivered by mail and other means contracts and invoices to George Michael Shipsey relating to Stonefield for work that was actually done at Obertz; (d) George Michael Shipsey represented in false draw requests, false subcontractor invoices and other false documents sent to First California Mortgage that work was performed at Stonefield when in fact the work was performed at Obertz; (e) George Michael Shipsey also overbilled and double billed for work performed at Stonefield, and (f) *as a consequence of the false representations provided by George Michael Shipsey,* First California Mortgage Company and McMorgan & Company authorized the release of money from the Pension Fund accounts as well as the issuance of checks payable to Michael Shipsey and Associates and various subcontractors.

7. *It was further part of the scheme and artifice to defraud that defendant in his draw request submissions made the following false and fraudulent pretenses, representations and promises to First California Mortgage Company, McMorgan and Company, and the Pension Funds well knowing at the time that said pretenses, representations and promises were false when made;* to wit: (a) that the invoices submitted by the subcontractors listed below were for labor and materials relating only to Stonefield, and (b) that the invoices submitted

by the subcontractors reflected the correct amounts claimed by the subcontractors for labor and materials provided at Stonefield....

(emphasis added).

The theft counts realleged and incorporated by reference the above paragraphs and further broadly alleged that "George Michael Shipsey, defendant herein, did embezzle, steal and unlawfully and willfully abstract and convert to his own use and the use of another ... [property belonging to a pension fund subject to ERISA]."

The money laundering counts alleged that Shipsey "knowingly engaged in ... a monetary transaction, in criminally derived property ... that is, proceeds obtained by theft and fraud...."

C. Shipsey's Trial

Shipsey's trial began on May 20, 1997. Shipsey subsequently moved for a judgment of acquittal and the district court dismissed two of the four money laundering counts. The district court instructed the jury on the theft counts as follows:

Now counts fourteen through twenty charge the defendant with theft of funds connected with an employee benefit plan in violation of [18 U.S.C. § 664]. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant willfully stole or converted property to his own use or the use of another; and

Second, the property belonged to an employee benefit plan subject [ERISA].

Now, an act is done willfully if it is done with an intend [sic] to defraud or for a purpose inconsistent with the purposes of the plan. In determining whether defendant acted willfully in causing a disbursement of moneys by a plan or connected fund, you may consider whether or not the defendant had a good faith belief that the disbursement was authorized.

Now, *to steal is to acquire or possess property as a result of some wrongful or dishonest act or taking.* Stealing requires that a person willfully obtain or retain possession of property which belongs to another with the intent to deprive the owner of the benefit of ownership or possession.

Conversion is the willful and unlawful taking and retaining of the property of another with the intent to deprive the owner of its use or benefit either temporarily or permanently....

(emphasis added).

On June 12, 1997, the jury found Shipsey guilty of the seven theft counts and the two undismissed money laundering counts. The jury could not reach a verdict on the mail and wire fraud counts, so the court declared a mistrial on those counts.

After the verdict, Shipsey moved for a new trial. Among other contentions, he argued that the district court erred in instructing the jury that it could convict Shipsey of theft under a theory other than fraud, the theory alleged in the indictment. Shipsey asserted that by allowing the jury to consider other theories of theft, the district court relieved the prosecution of its burden to prove both that Shipsey made misrepresentations and that First Cal and the pension funds relied upon them, both elements of theft by false pretenses, *see, e.g., People v. Allen,* 208 Cal. App.2d 537, 540, 25 Cal.Rptr. 351 (1962). The district court denied the motion. It noted that Shipsey was charged in the indictment with violating 18 U.S.C. § 664, which imposes liability on

> [a]ny person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of an [ERISA plan].

The district court held that, even though the theft counts incorporated paragraphs five through seven of the indictment and therefore specifically alleged that the unauthorized distributions resulted from Shipsey's false pretenses, the government

could prove theft by any theory encompassed by the statute.

Shipsey was sentenced to thirty seven months on each count, to be served concurrently, three years supervised release on each count also to be served concurrently, and was released pending his appeal.

## Analysis

Shipsey challenges his convictions on a number of grounds. He argues that the district court erred in its jury instructions on the requisite criminal intent for theft, Shipsey's defense theory of entitlement, and the theory of theft for which Shipsey had been charged. He also contends that the convictions were not supported by substantial evidence and that the various indictment counts were duplicitous and multiplicitous of each other. Because we hold that the district court erred by constructively amending the theft counts in the indictment, we need not reach most of Shipsey's contentions.

### A. Constructive Amendment of the Indictment

Shipsey argues that the indictment required the government to prove that he executed his theft by causing others to rely on his misrepresentations. He further contends that the jury charge on the theft counts constituted a constructive amendment of the indictment because it allowed the jury to find him guilty of theft if he engaged in "some wrongful ... act or taking," which did not require the jury find Shipsey acted dishonestly nor that the victims relied on his dishonest statements. Because Shipsey did not timely raise this objection before the district court, we review for plain error. *See United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

The Fifth Amendment's Grand Jury Clause endows defendants who are charged with felonies with a substantial right to be tried only on the charges set forth in an indictment by a grand jury.

*See Stirone v. United States,* 361 U.S. 212, 215, 217, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); *United States v. Miller,* 471 U.S. 130, 142, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985); *United States v. Solis,* 841 F.2d 307, 309 (9th Cir.1988). "The court may not substantially amend the indictment through its instructions to the jury." *United States v. Stewart Clinical Lab., Inc.,* 652 F.2d 804, 807 (9th Cir.1981).

*Stirone,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), is the seminal case on constructive amendments of the indictment. The defendants in *Stirone* were charged with violating the Hobbs Act by interfering with shipments with sand coming into Pennsylvania. *Id.* at 213, 80 S.Ct. 270. The district court in that case, however, allowed the introduction of evidence that showed interference with the export of steel from Pennsylvania to other states. *Id.* at 214, 80 S.Ct. 270. The district court also instructed the jury that it could convict if it found that Stirone interfered with sand *or* steel. *Id.* Interference with commerce is an essential element of a Hobbs Act crime. *Id.* at 218, 80 S.Ct. 270. The Supreme Court held that if an indictment alleges interference with one particular kind of commerce, then the conviction must rest on that particular interference and not interference with another type of commerce, "even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened." *Id.* Because it was possible the defendant was convicted of a charge that the grand jury did not make against him, the district court in *Stirone* had fatally erred. *Id.*

Here, the indictment alleged that Shipsey executed his crime by false pretenses, but the district court's jury instructions permitted the jury to convict Shipsey if he obtained the pension fund money by a "wrongful act" or if Shipsey converted the money. In his summation, the prosecutor told the jury that even if Shipsey "hadn't used false representations, it would be wrongful for him to . . . take those moneys." The district court's order denying Shipsey's motion for a new trial demonstrates that it believed that another theory of theft was proven at trial. The district court concluded that evidence at trial established that Shipsey accomplished his theft by making an unauthorized taking with specific criminal intent. The jury instructions do not even lay out the elements of theft by false pretenses including the crucial elements of false representations and reliance, *see, e.g., Allen,* 25 Cal. Rptr. at 353. The instructions for the mail and wire fraud counts explicitly required proof of specific false statements and reliance by First Cal and the pension funds, but the jury could not reach a verdict on these counts.

We are thus not confronted with a nonprejudicial variance as in *United States v. Olson,* where the indictment alleged that the defendants intended to obtain money in their scheme to defraud but the jury instructions allowed the jury to convict if the jury found intent to obtain money *or* property. 925 F.2d 1170, 1174–76 (9th Cir.1991). In *Olson,* we emphasized that all of the evidence presented at trial indicated that obtaining money was the object of the conspiracy. *Id.* at 1175. "Here, we have no similar assurances that Shipsey was convicted only of the crime for which the grand jury charged him, because the evidence against Shipsey also supported the wrongful taking theft theory on which the judge instructed the jury."

Thus, this case is akin to *United States v. Pazsint,* 703 F.2d 420, 423 (9th Cir. 1983), where we reversed the defendant's conviction because we found that the district court had constructively amended the indictment. The indictment's charging language in *Pazsint* alleged that the defendant violated 18 U.S.C. § 111 by interfering with a government agent's duties. This statute criminalized both interference with official duties and assault on a federal officer. *Id.* at 423. We held that it was plain error for the district court to instruct the jury on the assault theory because it

was not charged in the indictment. *Id.* at 423–24.

Just as the district court in *Pazsint* was precluded from instructing the petit jury on the assault theory, which the grand jury had not included in the indictment, the district court here was precluded from charging the petit jury on the theory of theft by an unauthorized taking accomplished by specific intent, which the grand jury had not included in the indictment. *See id.* at 423–24; *United States v. Nunez,* 180 F.3d 227, 230–34 (5th Cir.1999) (holding that the district court had constructively amended the indictment when it instructed the jury on assault with and without a firearm and the indictment only charged assault with a firearm); *see also United States v. Peel,* 837 F.2d 975, 979 (11th Cir.1988) (constructive amendment occurred when jury instruction permitted conviction on a statutory section not charged in the indictment).

The government contends that the district court was not required to limit its instructions to a single theory because the theft counts broadly allege that Shipsey did "embezzle, steal . . . , abstract and convert monies" without specifying any single means of doing so. We disagree.

■ An indictment must include "a statement of facts and circumstances that will inform the accused of the specific offense with which he is charged." *United States v. Cecil,* 608 F.2d 1294, 1296 (9th Cir.1979); *see also Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Here, the indictment contained such a statement in paragraphs five through seven. These paragraphs, quoted above and incorporated into the theft counts, set forth the theory that Shipsey obtained money from First Cal and the pension funds by means of false representations and omissions. Nowhere in the indictment is there a statement of facts and circumstances that would support other possible § 664 theft theories broadly invoked in the theft counts. Thus, Shipsey had notice only of the theory of theft by fraudulent pretenses and the government was obligated to prove this theory of theft.

Because there is a real likelihood that the jury actually convicted Shipsey of a crime for which the grand jury did not indict him, the district court's instruction constructively amended the indictment. We have held that this is plain error that requires reversal. *See United States v. Solis,* 841 F.2d 307, 309 (9th Cir.1988); *United States v. Pazsint,* 703 F.2d 420, 424 (9th Cir.1983). We have not had occasion to determine whether reversal is always required after *United States v. Olano,* 507 U.S. 725, 735, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), which recognizes more discretion for courts reviewing for plain error.

Since *Olano,* the Fourth Circuit has held that regardless of whether a defendant objects, *Stirone* demands reversal when a constructive amendment has occurred. *See United States v. Floresca,* 38 F.3d 706, 713 (4th Cir.1994) (en banc) (stating that it would be "intolerably unfair" to deprive a defendant of the grand jury's protection); *United States v. Randall,* 171 F.3d 195, 210 (4th Cir.1999) (applying *Floresca*). The Fifth Circuit has held that it has discretion under *Olano* to decide whether or not to correct a constructive amendment error. *See United States v. Reyes,* 102 F.3d 1361, 1365 (5th Cir.1996). The Fifth Circuit declined to reverse the defendant's conviction in *Reyes,* however, because the defendant was not prejudiced. *See id.* at 1365–66.

■ We need not decide whether reversal is always required because we hold that Shipsey was prejudiced by the constructive amendment of the indictment. In this case, the jury could not reach a verdict on the mail and wire fraud counts. This demonstrates that Shipsey was prejudiced by the district court's instruction that allowed the jury to convict Shipsey of theft without finding fraud. Thus, we must vacate Ship-

sey's theft convictions. *Cf. United States v. Ramirez,* 182 F.3d 544, 548 (7th Cir. 1999) (plain error when the defendant would have been acquitted but for the constructive amendment).

■ Shipsey's money laundering convictions rest on the jury having found that the laundered property was derived from theft. Thus, we must vacate these convictions as well.

### B. Sufficiency of the Evidence

■ Shipsey asserts that the evidence against him was not sufficient in various respects. Although we reverse Shipsey's theft and money laundering convictions, we reach this claim because if the evidence is insufficient on any count, the Double Jeopardy Clause would bar retrial on that count. *See United States v. Aguilar,* 80 F.3d 329, 334 (9th Cir.1996) (en banc). Sufficient evidence exists to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See United States v. Bancalari,* 110 F.3d 1425, 1428 (9th Cir. 1997).

■ Counts eighteen and nineteen pertain to draw requests made by Shipsey for money to pay International Windows ("IW"), a subcontractor on Stonefield, purportedly for items for Stonefield. Shipsey argues that the government did not show that First Cal and the pension funds relinquished the money in these transactions in reliance on any of the false statements alleged in the indictment. The evidence fully established that First Cal and the pension funds relinquished money in these transactions because of misrepresentations made by Shipsey.

■ Count twenty alleges that Shipsey stole approximately $125,000 from First Cal on or about October 27, 1989. Counts twenty three and twenty four charge that on November 3, 1989, and November 2, 1989, Shipsey engaged in money laundering of $100,000 and $25,000 respectively in connection with the transaction in count twenty. These counts pertain to a draw request Shipsey made to reimburse Golden State Lumber ("GSL"), another subcontractor, for a lumber order. Shipsey argues that the government's proof does not demonstrate that he stole $125,000 from First Cal on the GSL disbursal because GSL provided nearly $125,000 in materials and services to Stonefield. We disagree. The evidence shows that Shipsey requested reimbursement from First Cal, ostensibly for materials supplied by GSL. He actually planned to use the money either for personal purposes or to secure a loan to repay GSL a debt for work done at both Stonefield and Obertz. Thus, the evidence shows that he obtained $125,000 from First Cal on the basis of false pretenses. Shipsey contends that he only obtained the $125,000 because GSL made an independent decision to part with it, which eliminates the basis for a finding that he took the money from First Cal. Whether GSL made an independent decision to part with the money, however, is irrelevant to whether Shipsey lied to obtain the money from First Cal in the first place.

■ Shipsey also argues that the government did not prove the allegations in certain theft counts because the government did not meet its obligation to show that the pension funds incurred loss. We are not persuaded. Takings, not losses, from four separate pension funds were the subject of these four separate counts. Shipsey completed his crime when he obtained the money through false pretenses. It is irrelevant whether the subcontractors eventually received less money than the full value of their work at Stonefield. *See United States v. Olson,* 925 F.2d 1170, 1175 (9th Cir.1991).

### Conclusion

In sum, we find meritless Shipsey's assertions regarding the sufficiency of the evidence against him. We need not reach Shipsey's remaining challenges because we hold that the district court's constructive amendment of the indictment requires that

we REVERSE Shipsey's convictions for theft and money laundering and remand for a new trial.

REVERSED AND REMANDED.