UNITED STATES of America, Plaintiff–Appellee,

v.

Marvin L. WISEMAN, Defendant–Appellant.

United States of America, Plaintiff–Appellee,

v.

William D. Mett, Defendant–Appellant.

Nos. 00–10325, 00–10341.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 11, 2001

Filed Dec. 19, 2001

Arthur K. Wachtel, San Francisco, California, for defendant-appellant Wiseman.

Dennis P. Riordan and Donald M. Horgan, San Francisco, California, for defendant-appellant Mett.

Lawrence L. Tong, Assistant United States Attorney, Honolulu, Hawaii, for the plaintiff-appellee.

Before: CYNTHIA HOLCOMB HALL, WARDLAW, and BERZON, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Marvin L. Wiseman and William D. Mett ("Defendants") were convicted in 1997 of embezzling money from a pension benefit plan governed by the Employee Retirement Income Security Act (ERISA). This court reversed their convictions on appeal and remanded for a new trial. *United States v. Mett,* 178 F.3d 1058 (9th Cir.1999). After the district court rejected Defendants' proposed jury instructions, Defendants waived a trial by jury and agreed to a bench trial on the transcripts and exhibits of the first trial. Defendants were again convicted on all counts. They now appeal their convictions and sentences. We affirm in part, reverse in part, and remand for resentencing.

## FACTUAL BACKGROUND

The following facts are taken from this court's opinion in Defendants' appeal from their first trial:

These criminal prosecutions stem from certain transactions involving ERISA[1] pension benefit plans administered by Center Art Galleries ("CAG") for its employees. Mett founded CAG, a retail art gallery, in 1973 and served as its president and sole shareholder. Wiseman served as a vice-president, responsible for staff training and art acquisition. Both defendants also served on the CAG board of directors. In 1977, CAG established two pension benefit plans for its employees. Both plans were funded solely by CAG contributions, and both were covered by ERISA. At all relevant times, Mett and Wiseman served as trustees for both plans, while CAG served as the plan administrator.

CAG fell on hard times in the early 1990s. In 1990, as a result of a federal investigation into CAG's sales practices, Mett, Wiseman, and CAG were indicted,

---

**1.** Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq.

tried and convicted of felony art fraud. The prosecution, coupled with a general downturn in the Hawaiian economy, proved devastating to CAG's financial health. Between March 1990 and November 1991, in order to meet CAG's financial obligations, Mett and Wiseman withdrew approximately $1.6 million from the pension plans and deposited the funds into CAG's general operating accounts. At no time during 1990 and 1991 did the defendants inform their employees of these transactions. CAG also did not disclose the withdrawal transactions on the 1990 Form 5500 that it filed with the IRS in connection with one of the benefit plans.[2]

On June 27, 1996, a federal grand jury returned a 16 count indictment against the defendants in connection with the pension plan withdrawals. At trial, the defense turned on whether the defendants possessed the requisite specific intent when they arranged the withdrawals. While admitting that they withdrew funds from the pension plans, the defendants characterized the withdrawals as "loans" necessary to carry CAG through rough financial times. According to the defendants, their actions were intended to benefit their employees, who would otherwise have been laid off and faced with unemployment. The defendants further argued that the employees implicitly authorized, or would have authorized the withdrawals had they known of them. On June 25, 1997, the jury convicted the defendants on 15 counts,[3]

finding them guilty of embezzling from a pension benefit plan, in violation of 18 U.S.C. § 664, conspiring to misappropriate the assets of a pension benefit plan, in violation of 18 U.S.C. § 371, unlawfully serving as a trustee of a pension benefit plan after being convicted of a felony, in violation of 29 U.S.C. § 1111, and filing a false annual report relating to a pension benefit plan, in violation of 18 U.S.C. § 1027.[4]

*United States v. Mett,* 178 F.3d at 1060–61 (footnotes in original).

Finding that the admission of certain documents and testimony violated Defendants' attorney-client privilege, this court reversed their convictions and remanded for a new trial. *Id.* at 1067. The court also rejected Defendants' "authorization" and "participant benefit" defenses to the pension fund embezzlement charges. *Id.* at 1067–68.

Prior to the retrial, Defendants submitted two proposed jury instructions to the district court and requested a pretrial ruling on whether the court would give the instructions. Defendants explained that if the court refused the proffered instructions, Defendants would waive a jury trial and submit the case to the court on the transcripts and exhibits from the first trial. Defendants further explained that although they would waive a jury for the retrial, they would appeal the court's denial of their proposed instructions.

The district court rejected the proposed instructions, and Defendants waived a jury trial. The waiver stated:

---

**2.** Pursuant to applicable tax laws, CAG as plan administrator was required to file Form 5500 annually in connection with one of the CAG plans, the Defined Benefit Plan. In completing a Form 5500, a plan administrator generally must report any transactions with parties in interest.

**3.** One count was dismissed at the close of the government's case.

**4.** The last count, involving the false filing of an annual report relating to an ERISA plan, named only Mett.

All parties and the court agreed that, should the defendants be convicted at a court trial, they would retain the right to challenge those convictions on appeal by raising the claim that the court erred in denying them these proposed instructions. It is on the basis of that understanding that the defendants now waive their right to a jury trial.

The court retried Defendants based on the transcripts and exhibits of the first trial, minus the testimony and documents this court found protected by the attorney-client privilege. The court found the defendants guilty on all counts and sentenced each to sixty-three months imprisonment and three years supervised release. Defendants appeal their convictions and sentences, arguing that the proposed jury instructions should have been accepted, that there was insufficient evidence to sustain their convictions, that evidence was admitted in violation of the attorney-client privilege, and that the district court erred in failing to apply offset principles to calculate the amount of loss for the purpose of determining Defendants' sentences. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## DISCUSSION

### I. Jury Instructions

■ We review de novo a denial of a defendant's jury instruction based on a question of law. *United States v. Eshkol*, 108 F.3d 1025, 1028 (9th Cir.1997).

#### A. Knowledge of Illegality

Before their retrial and before agreeing to a bench trial, Defendants proposed a jury instruction that would have required the government to "prove beyond a reasonable doubt that the defendants took money from the funds knowing that it was illegal to do so" to convict Defendants of violating 18 U.S.C. § 664. The district court correctly rejected Defendants' proposed instruction.

■ A person violates § 664 if he "embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another" assets belonging to an employee pension benefit plan subject to ERISA. 18 U.S.C. § 664. In Defendants' prior appeal in this case, we explained that "the essence [of a § 664 offense] is theft and in the context of ... pension funds the offense includes a taking or appropriation that is unauthorized, if accomplished with specific criminal intent." *Mett*, 178 F.3d at 1067 (alteration in original) (quoting *United States v. Andreen*, 628 F.2d 1236, 1243 (9th Cir.1980)). "The act to be criminal must be willful, which means an act done with a fraudulent intent or a bad purpose or an evil motive." *Andreen*, 628 F.2d at 1241. While the defendant must "knowingly act[ ] wrongfully to deprive another of property," there is no requirement that the defendant also know his conduct was illegal. *United States v. Ford*, 632 F.2d 1354, 1362 (9th Cir.1980), *overruled on other grounds by United States v. DeBright*, 730 F.2d 1255, 1259 (9th Cir.1984) (en banc).

Ratzlaf v. United States, 510 U.S. 135, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994), and *United States v. Lizarraga–Lizarraga*, 541 F.2d 826, 828 (9th Cir.1976), do not require a different result. Unlike in those cases, there is no risk in this § 664 case that Defendants would be convicted for otherwise seemingly innocent conduct, because they must know that they are "acting wrongfully and contrary to the trust placed in them by the pension trust beneficiaries." *Ford*, 632 F.2d at 1362; *see also*

*United States v. Henderson,* 243 F.3d 1168, 1172 (9th Cir.2001) ("[P]roof of knowledge of unlawfulness is required when the criminal conduct is contained in a regulation instead of in a statute, and when the conduct punished is not obviously unlawful, creating a 'danger of ensnaring individuals engaged in apparently innocent conduct.'" (quoting *Bryan v. United States,* 524 U.S. 184, 191, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998))). Indeed, to require more would mean that to prove embezzlement in ERISA cases would require proof of a higher mens rea than in other embezzlement cases. This court has determined, however, that "embezzlement," as used in § 664, is to be given its "accepted definition[ ]," which does not include a requirement that the defendant know his conduct is illegal. *Andreen,* 628 F.2d at 1241; *see also United States v. Thordarson,* 646 F.2d 1323, 1335 n. 22 (9th Cir. 1981) (listing elements of embezzlement offense). The district court correctly rejected Defendants' proposed instruction.

### B. Intent to Borrow

Defendants also requested that the district court instruct the jury, "Since [the defendants] are accused of stealing the plan funds rather than borrowing them, the government must prove beyond a reasonable doubt that the funds at issue were not loaned to [Center Art Galleries ('CAG')]". The instruction further would have required the jurors to acquit if they had "a reasonable doubt as to whether the defendants intended to borrow the money rather than steal it." According to Defendants, because the government's theory of the case was that the transfers from the pension plan to CAG were the result of theft or embezzlement, the government needed to prove that the transfers were not actually loans. Defendants argue that

the district court's failure to abide by the law as stated in their proposed instruction resulted in a constructive amendment of the indictment in violation of *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), and *United States v. Shipsey,* 190 F.3d 1081 (9th Cir.1999). We disagree.

 Evidence that Defendants borrowed the plan funds may be relevant to their criminal intent. *Cf. Mett,* 178 F.3d at 1068. Intent to repay generally is not a defense to embezzlement, however. *See United States v. Ross,* 206 F.3d 896, 899 (9th Cir.2000). Nor is it a defense to conversion. *See Thordarson,* 646 F.2d at 1335 n. 22 (noting that conversion can be accomplished "without any intent to keep possession, so long as the property is misused or abused" (citing *Morissette v. United States,* 342 U.S. 246, 271–72, 72 S.Ct. 240, 96 L.Ed. 288 (1952))). The government thus did not need to disprove Defendants' intent to borrow the funds to convict them of embezzlement.

 Further, the indictment charged Defendants with conspiracy "to embezzle, steal and unlawfully and willfully abstract and convert to their own use, and the use of another" pension benefit plan money, and with related substantive counts. The indictment also alleged that Defendants "withdrew" funds from the pension accounts, "transferred the bulk of the money to CAG to keep the company operational," drew substantial salaries and cash advances from CAG's accounts, and used money to pay their criminal attorneys. The indictment clearly does not limit the government's theory to *stealing.* Nor does it preclude the argument that the theft may have been accomplished by first transferring the money to CAG in the

form of a loan. *Cf. Shipsey*, 190 F.3d at 1087 (reversing a conviction where the indictment alleged that the defendant took pension fund money by means of false pretenses, but the jury instructions permitted the jury to convict if it found the defendant took the money by false pretenses *or* by a "wrongful act" or conversion, because the defendant had notice only of the theory of theft by false pretenses). Similarly, the government's argument at sentencing indicated only that the government proceeded on a theft theory, not that the government excluded the possibility that the theft was accomplished through transfers taking the form of loans. There was no constructive amendment of the indictment, and Defendants' proposed loan instruction was properly rejected.

## II. Sufficiency of the Evidence

■ Claims of insufficient evidence are reviewed de novo. *United States v. Antonakeas*, 255 F.3d 714, 723 (9th Cir.2001).

### A. Mett

■ Mett was convicted of violating 18 U.S.C. § 1027, which criminalizes the making of known false statements, and the knowing concealment of material facts, in a document required by ERISA. In the CAG benefit plan's 1990 Form 5500 ERISA annual report, question 30(e) of the Form 5500 asked whether the notes to the appended plan financial statement disclosed any non-exempt transactions of parties in interest, which includes transactions between the plan and CAG. Information on such transactions is material because it may indicate a lack of sufficient funds in the plan to pay benefits. Mett's response to question 30(e) was "yes." Question 30(f) asked whether the plan engaged in any such transactions that were not re-

ported in question 30(e). Mett answered the question "no," thus indicating that the Form 5500 fully disclosed all transactions between the plan and CAG. However, the Form 5500 statement of plan assets failed to disclose the over $400,000 that had been transferred from the plan to CAG's operating account in 1990.

Mett argues that the evidence is insufficient to convict him of violating § 1027 because a "no" answer to question 30(e) would have been more misleading than his "yes" by indicating that no prohibited transactions had occurred when in fact they had. The evidence shows, however, that Mett failed to disclose over $400,000 in prohibited transactions on the Form 5500, even though his responses to the questions indicated that the information provided in the form was complete.

Mett also argues that his conviction must be reversed because there was no evidence that he knew the statement of plan assets failed to list the prohibited transactions. Mett clearly knew about the transactions between the plan and CAG. Although Mett testified that he turned over all relevant plan documents to the accountant who prepared the statement, the accountant testified that Mett did not tell him about the transfers from the plan to CAG. Mett signed and filed the Form 5500. The evidence is sufficient to support Mett's conviction. *See United States v. Martorano*, 767 F.2d 63, 66 (3d Cir.1985) (finding a violation of § 1027 where the defendant filed a Form 5500 that failed to disclose a prohibited transaction, and the defendant failed to disclose to his attorney the relevant information needed to accurately complete the form); *United States v. Tolkow*, 532 F.2d 853, 857 (2d Cir.1976) (finding a § 1027 violation where the defendant signed and filed a false Form 5500,

and the defendant failed to disclose party-in-interest loans to the accountant preparing the attached financial reports).

## B. Wiseman

Wiseman argues that there is insufficient evidence to support a finding that he was aware of, or participated in, any improper financial transactions involving plan funds, and therefore his convictions on counts one through twelve for violating 18 U.S.C. § 664 should be reversed. The evidence is sufficient to support his convictions.

Key evidence of Wiseman's involvement in the embezzlement is his endorsement, along with Mett's as joint signatories, of the checks drawn from the benefit plan accounts and deposited in CAG's account. Wiseman argues that there is no evidence in the record to authenticate the endorsement on the checks as his signature and that the district court committed reversible error when it determined that Wiseman's failure to object to the checks at his first trial and his stipulation to a second trial on the transcripts and exhibits of the first trial "permits the court to infer that they are authentic and genuine."

Despite Wiseman's stipulation, the burden remained on the government to prove its case beyond a reasonable doubt, and Wiseman made no express waiver of any objection that he could have raised during the first trial. The district court did not rely solely on Wiseman's stipulation to find the signatures authentic, however. The court also found that "the government has proven, through abundant other circumstantial evidence, that [the checks] were, in fact, signed by Mr. Wiseman." The record contains known exemplars of Wiseman's signature, from which the court could make a lay comparison of the signatures and conclude they were Wiseman's. *See United States v. Woodson*, 526 F.2d 550, 551 (9th Cir.1975) (permitting a lay comparison of signatures).

Moreover, the evidence shows that Wiseman participated in concealing the withdrawal of plan funds from CAG employees. When CAG employees grew concerned for the security of their pension funds, Wiseman enlisted actuary Kathy Choy to give the employees reassurances that their money was secure. Wiseman attended meetings wherein Choy attempted to reassure CAG employees that their pension funds were secure. Although Wiseman was present at the meetings and knew of the withdrawals from the plan accounts, he never told the employees that money had been withdrawn from the plan accounts or that CAG was using plan funds for operating expenses.

Wiseman's participation in the concealment of the withdrawal of plan funds also supports the court's finding that Wiseman possessed the requisite criminal intent. *See United States v. Harris*, 185 F.3d 999, 1006 (9th Cir.1999) (inferring intent from acts of concealment). Moreover, Wiseman's criminal intent can be inferred from the substantial benefit he received from the embezzlement of plan funds. *See Andreen*, 628 F.2d at 1245 (noting that criminal intent "may be inferred from ... evidence that transfers yielded personal profit to the trustee"). Wiseman received $515,000 in salary from CAG while the unlawful withdrawals were being made. Wiseman also avoided payment of a $700,000 fine resulting from his 1990 art fraud conviction by arguing to the court in that case that the money was to be placed into the employee pension plan because it was underfunded. Wiseman

and Mett then proceeded to remove the entire $700,000 from the plan account.

Wiseman further argues that because the government witnesses and counsel referred to "Mett and Wiseman" without distinguishing the conduct of one from the other, the evidence is too vague as to Wiseman's own conduct to support his conviction. Wiseman did not object to the government's questions referring to "Mett and Wiseman." Further, there is sufficient evidence regarding Wiseman's independent conduct to support his conviction. He participated in concealing the plan withdrawals from employees, received his own $515,000 salary, and signed the withdrawal checks. Although Wiseman offers a lengthy review of evidence that tends to minimize his role in CAG, his role as a trustee, and his involvement in the transfer of funds from the plans to CAG, Wiseman does not dispute that he was a plan trustee, that he signed the plan documents, and that the plan documents prohibited transfers of plan assets to CAG. The evidence is not impermissibly vague, and it is sufficient to support Wiseman's conviction on counts one through twelve.

## III. Attorney–Client Privilege

■ We review the district court's attorney-client privilege determination de novo. *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir.1997).

In counts thirteen and fourteen,[5] Defendants were charged with violating 18 U.S.C. § 1111 by serving as trustees of an employee benefit plan while knowing their 1990 art fraud convictions disqualified them from doing so. In the first trial, Defendants' attorney, Thomas Foley, testified that he advised Mett and Wiseman that they could no longer serve as ERISA trustees. *See Mett*, 178 F.3d at 1062. Mett then testified at the trial and confirmed that Foley informed him and Wiseman that they could no longer serve as trustees.

■ On appeal, this court held that Foley's testimony was admitted in violation of Defendants' attorney-client privilege. *Mett*, 178 F.3d at 1065. Before retrial, Defendants moved to exclude all of Foley's testimony plus Mett's testimony that Foley told him and Wiseman they could no longer serve as trustees. The district court granted the motion as to Foley's testimony only, and then relied on Mett's testimony to find Defendants guilty. Defendants contend that Mett's testimony should have been excluded as testimony derived from a violation of their attorney-client privilege.

By failing to exclude Mett's testimony, the district court failed to give full effect to this court's ruling in the prior appeal. Mett's testimony that Foley informed him and Wiseman they were disqualified from serving as plan trustees clearly was offered in response to Foley's testimony as part of an attempt to explain it away and provide a good faith justification for their continued service as trustees. Mett explained that he and Wiseman *tried* to withdraw as trustees when Foley informed them they were disqualified, but Foley told them they could not withdraw until a successor trustee was found. Further, had the government asked Mett at trial whether Foley told him and Wiseman they were disqualified from serving as trustees, under this court's ruling in the prior appeal, the district court would have been required to sustain an objection on privilege

---

**5.** Count thirteen applied to Mett; count fourteen applied to Wiseman.

grounds. It thus does not require "substantial speculation" to conclude that the government would not have been able to elicit the testimony, and the district court abused its discretion by denying the motion to exclude Mett's testimony.

■ Moreover, the error was not harmless. The district court expressly relied on Mett's testimony to convict both Defendants of violating 18 U.S.C. § 1111. The government does not argue that there was other evidence in the record from which the district court could have found Defendants guilty. We therefore reverse Defendants' convictions on counts thirteen and fourteen.

## IV. Sentencing

■ Defendants argue that their sentences must be reversed because the district court failed to apply the offset principles set forth in the commentary to U.S.S.G. § 2F1.1 to calculate the amount of loss for the purpose of determining Defendants' sentences. Defendants' argument hinges on their factual contention that the prohibited transactions involved loans. The district court's factual findings in the sentencing phase are reviewed for clear error. *United States v. Caperna*, 251 F.3d 827, 830 (9th Cir.2001).

The district court specifically found, however, that "the argument that these funds were loaned is simply belied by the evidence." Defendants point to evidence in support of their claim that the withdrawals were loans, but that evidence does not mandate the conclusion that the district court's findings were clearly erroneous. Indeed, the only promissory notes relating to the alleged loans were prepared well after the withdrawals occurred, after the Department of Labor initiated an in-

vestigation into CAG's plans, and after Defendants were replaced as plan trustees. Because the district court's finding that the transfers were not loans is not clearly erroneous, the court did not err by failing to apply the offset principles in § 2F1.1 to calculate the amount of loss.

## CONCLUSION

For the foregoing reasons, we reverse both Defendants' convictions on counts thirteen (Mett) and fourteen (Wiseman), violation of 18 U.S.C. § 1111. We affirm their convictions on the remaining counts and affirm the district court's calculation of the amount of loss for sentencing purposes. The case is remanded for resentencing.

AFFIRMED in part, REVERSED in part, and REMANDED.