**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 18-10133 |
| Plaintiff-Appellee, | D.C. No. 5:16-cr-00211-LHK-2 |
| v. | |
| GREGORY LAMONT BELCHER, | MEMORANDUM* |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 18-10333 |
| Plaintiff-Appellee, | D.C. No. 5:16-cr-00211-LHK-1 |
| v. | |
| VILASINI GANESH, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Lucy H. Koh, District Judge, Presiding

Argued and Submitted April 16, 2021
San Francisco, California

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: SCHROEDER, RAWLINSON, and BADE, Circuit Judges.

Gregory Belcher and Vilasini Ganesh appeal their jury convictions and sentences for crimes related to their submission of false medical insurance claims. Belcher was convicted of one count of making a false statement relating to health care matters in violation of 18 U.S.C. § 1035; Ganesh was convicted of five counts of health care fraud in violation of 18 U.S.C. § 1347 and five counts of making a false statement in violation of § 1035. The two were medical doctors who lived together as a married couple and practiced medicine in the same office building. Belcher was sentenced to one year and a day, and Ganesh to sixty-three months. We affirm.

Belcher contends there was a constructive amendment to the indictment that may have allowed the jury to convict him without finding that he acted with intent to defraud. Yet making a false statement in violation of § 1035—the only crime of which Belcher was convicted—does not require intent to defraud. *See* 18 U.S.C. § 1035. Whether or not Belcher believed he was actually entitled to payment from Cigna is therefore immaterial to his conviction for making a false statement. In a belated filing, Belcher cites *United States v. Shipsey*, 190 F.3d 1081 (9th Cir. 1999). In that case, the indictment alleged that the defendant obtained money from a certain pension fund "by false pretenses," but the jury instructions permitted

2

conviction as long as he had obtained the money by a "wrongful act." *Id.* at 1084–86. Because the facts alleged in the indictment therefore differed from the facts presented and argued to the jury as sufficient to convict, we reversed. This, however, is not such a case. Belcher was indicted for knowingly and willfully submitting a claim for patient "M.H." to Cigna on November 26, 2013 for "[s]ervice not rendered on [the] dates and for [the] duration claimed," and he was convicted of the same factual charge.

The principal argument Belcher presents to challenge his conviction is insufficiency of the evidence. The jury was properly instructed that, to convict Belcher for violating § 1035, it was required to find that he knowingly made a materially false statement. The evidence was more than sufficient to show that Belcher, on November 26, 2013, knowingly submitted a claim for reimbursement for physical therapy that did not occur on the date stated. As the government's evidence demonstrated, the claim sought compensation for massage therapy that had been actually provided on the same day as physical therapy, and Belcher admitted he knew that the insurer would be less likely to pay for two similar treatments received on the same day. Belcher thus knew that he was unlawfully submitting materially false claim information when he engaged in this "split billing." Belcher also used billing codes meant for physical therapy when

3

requesting reimbursement for massage therapy sessions. As Belcher admitted at trial, he knew that massage therapy—unlike physical therapy—is often not reimbursable.

There was no abuse of discretion in the district court's refusal to give the defendants' requested instructions on good faith, because the jury instructions adequately laid out the crimes' intent requirements. *United States v. Shipsey*, 363 F.3d 962, 967 (9th Cir. 2004), *overruled on other grounds by United States v. Miller*, 953 F.3d 1095 (9th Cir. 2020).

Belcher and Ganesh also claim that the district court reversibly erred when it instructed the jury that "scheme to defraud" meant a plan intended to "deceive or cheat," when our circuit law has established it must be a plan intended to "deceive *and* cheat." *Miller*, 953 F.3d at 1102–03 (citing *Shaw v. United States*, 137 S. Ct. 462, 469 (2016)). The problem in *Miller* and *Shaw* was that the instructions provided could have been understood to encompass mere intent to deceive, without any intent to gain money or property. *Shaw*, 137 S. Ct. at 469 (requiring "inten[t] to deceive, cheat, or deprive a financial institution of something of value"); *Miller*, 953 F.3d at 1102 (requiring intent to "deceive or cheat").

However, to the extent there was instructional error, neither Belcher nor Ganesh objected to this error, and they failed to establish plain error. *See United*

4

*States v. Olano*, 507 U.S. 725, 734–35 (1993).  Belcher was convicted only under § 1035, which does not require a finding that the defendant committed a scheme to defraud, nor did the district court's instruction as to § 1035 incorporate or reference the purported erroneous instruction as to the charges for health care fraud under § 1347.  *See United States v. Marsh*, 26 F.3d 1496, 1502 (9th Cir. 1994).  Ganesh failed to develop any argument establishing why any error under *Shaw* or *Miller* prejudiced her.  Thus, Belcher and Ganesh failed to demonstrate plain error entitling them to reversal.

We also affirm the district court's denials of the defendants' motions for acquittal and new trial.  These motions involve spreadsheets of claim information pulled from insurers' databases and presented at trial without objection.  Ganesh now contends prosecutors misrepresented some legitimately billed claims in the spreadsheets as false.  Ganesh specifically points to a spreadsheet that contained some legitimate entries representing work done by Edward DeWees, a former colleague.  After his departure, she falsely submitted other claims under his name, many of which also appear on the spreadsheet.  Counsel for the government displayed parts of this spreadsheet during its closing argument and called attention to how often DeWees's name appeared.  The record goes on to show, however, that counsel used these observations only to argue that, given how many claims were

consistently billed under DeWees's name, Belcher and Ganesh must have entered into a conspiratorial agreement to engage in such billing. Since the jury ultimately acquitted Ganesh and Belcher of all conspiracy charges, Ganesh cannot show, as she must, that the government's alleged misuse of the spreadsheet was material. *See United States v. Renzi*, 769 F.3d 731, 751 (9th Cir. 2014) (citing *Napue v. Illinois*, 360 U.S. 264 (1959)).

Moreover, later in closing argument, counsel for the government examined the individual false claims that were actually charged in the indictment under § 1347 and § 1035 and demonstrated their falsity by cross-referencing the spreadsheet's contents against matching explanation of benefit ("EOB") forms. Even assuming *arguendo* that the government's use of the spreadsheets may have been misinterpreted by the jury, the district court correctly concluded that the defendants' motions based on newly discovered evidence in the spreadsheets, not filed until after trial, would fail for lack of diligence. Although the district court characterized its denial of one of these motions as "for lack of jurisdiction," denying the motion was warranted on its merits. *See* Fed. R. Crim. P. 37(a) (allowing a district court to deny a motion on the merits while an appeal is pending).

Belcher contends there was sentencing error in the district court's loss calculation. He argues that the loss to the insurance companies from compensating for massage services should have been offset by the fair market value of such services. But the district court reasonably concluded that no offset was appropriate because insurers do not ordinarily reimburse any amount for massage therapy. In addition, as the district court noted, calculating offsets or credits would have been very difficult in this case because, per Belcher's instructions, the therapists involved did not keep any patient charts, documentation, or other records of what services they had provided. The district court carefully laid out the legal and factual bases for the loss calculations it made, and it correctly applied the "clear and convincing" standard.

As for Ganesh's convictions, the evidence showed that she submitted bills for patient visits that never happened, consistently used the highest-tier medical billing codes regardless of the nature or amount of care actually provided, and submitted bills identifying former colleague DeWees as the care provider long after he had stopped working with her. The government's evidence against Ganesh included claim spreadsheets, EOB forms, and testimony from patients, former employees, and insurance investigators. There is no serious question that this evidence was sufficient to convict Ganesh.

Ganesh contends the magistrate judge erred by denying two of her motions for substitution of counsel. With respect to the first such motion, she argues the court failed to make an "adequate inquiry" into the nature of a conflict. *See United States v. McClendon*, 782 F.2d 785, 789 (9th Cir. 1986). Ganesh made this request less than a week before trial was scheduled to commence. She was represented at the time by appointed counsel she had originally chosen and retained, and the lawyer she wanted substituted told the court that he was not prepared to "substitute in at this point in time." The court asked current and proposed substitute counsel about the reasons for the change in counsel, instructed Ganesh to consult with her counsel and with her family, and gave Ganesh an opportunity to address the court. Ganesh has never explained what further inquiry should have been made. Under these circumstances, the court did not abuse its discretion.

Ganesh made another motion for substitution of counsel about three weeks before the start of sentencing, which already had been delayed by over a month. The two lawyers she wanted to be substituted refused to commit to the established sentencing schedule. And although the court repeatedly asked for an explanation of why keeping her current counsel would be unfair, it received only vague answers in response. Again, there was no abuse of discretion in denying the motion.

Ganesh points to a chart in the superseding indictment that described certain claim submissions as being false with respect to date and duration. She contends that the government was required to proceed on the theory that each such claim was false as to both and that the district court's denial of her request to instruct the jury accordingly resulted in a constructive amendment. But the district court correctly ruled that evidence as to falsity on either ground was sufficient. *United States v. Miller*, 471 U.S. 130, 136 (1985) ("[A]n indictment may charge . . . the commission of any one offense in several ways," "[a]s long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment.").

The district court did not err at Ganesh's sentencing by imposing enhancements for abuse of a position of trust, U.S.S.G. § 3B1.3, and for committing an offense involving ten or more victims, *id.* § 2B1.1(b)(2)(A)(i), and the court appropriately calculated a loss in excess of $550,000, *id.* § 2B1.1(b)(1)(H). Insurers are in a position of having to trust physicians who make claims for reimbursement. *United States v. Rutgard*, 116 F.3d 1270, 1293 (9th Cir. 1997). Four insurers billed by Ganesh were the financial victims of her crimes, and, under the Guidelines, dozens of her patients were also "victims" for sentencing enhancement purposes because their names and identifications were

used to make false claims. U.S.S.G. § 2B1.1 cmt. n.4(E). The district court sufficiently explained and fairly made its loss calculations, which conservatively relied only on payments Ganesh received for claims falsely made under DeWees's name. The fact that Ganesh was not reimbursed for many of her other false claims is irrelevant. Ganesh, like Belcher, argues that she should have obtained fair market value offsets for services she rendered. We reject this argument. Ganesh has not explained—below or before us—why she should be credited for services that she fraudulently claimed under another doctor's name. *See United States v. Popov*, 742 F.3d 911, 916 (9th Cir. 2014). The insurers bore no obligation to pay these falsified claims.

    **AFFIRMED.**