**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, <br><br> v. <br><br> DOREN HAROLD WARD, AKA Gemini Havorro Jones, *Defendant-Appellant*. | No. 12-50536 <br><br> D.C. No. 2:11-cr-01067-TJH-1 <br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, District Judge, Presiding

Argued and Submitted
December 4, 2013—Pasadena, California

Filed April 3, 2014

Before: Paul J. Watford and Andrew D. Hurwitz, Circuit
Judges, and William E. Smith, Chief District Judge.[*]

Opinion by Judge Smith

---

[*] The Honorable William E. Smith, Chief District Judge for the U.S.
District Court for the District of Rhode Island, sitting by designation.

## SUMMARY[**]

### Criminal Law

Reversing a conviction on two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) and remanding for further proceedings, the panel held that the district court constructively amended the indictment by permitting the jury to convict the defendant of stealing the identities of victims other than the specific victims whose identities the indictment accused the defendant of stealing.

### COUNSEL

Davina T. Chen (argued), Glendale, California, for Defendant-Appellant.

Cathy J. Ostiller (argued), Robert E. Dugdale, Assistant United States Attorneys, and André Birotte Jr., United States Attorney, Los Angeles, California, for Plaintiff-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

SMITH, Chief District Judge:

Following a jury trial, Doren Harold Ward was convicted on numerous charges, including two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). Ward appeals the aggravated identity theft convictions, arguing that the district court constructively amended the indictment in violation of the Fifth Amendment. We agree.

I.   Factual Background

   A.  The Scheme

In 2011, Ward and several co-conspirators were involved in a scheme to defraud Chase Bank USA, N.A. and its customers. The co-conspirators gathered victims' personal information and transmitted it to a co-conspirator in the United Kingdom ("UK"). The UK co-conspirator would then phone Chase and impersonate the victim, using the personal information to respond to Chase's security questions and corroborate the falsified identity. At the request of the UK co-conspirator, Chase would mail a replacement credit card to an address in California. Ward and his co-conspirators then used these replacement credit cards to make expensive purchases. In total, Chase's losses amounted to some $299,000.

   B.  Pretrial Events

In a first superseding indictment, Ward was charged with one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349, two counts of bank fraud in violation of

18 U.S.C. § 1344(1), one count of access device fraud in violation of 18 U.S.C. § 1029(a)(2), and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). Count VI, charging aggravated identity theft, accused Ward of "knowingly possess[ing] and us[ing], without lawful authority, a means of identification of another person, that is, names and account numbers of customers of [Chase]."

After Ward moved to dismiss Count VI because no specific victim was named, a second superseding indictment was returned, separating former Count VI into Counts VI and VII. Count VI charged Ward with aggravated identity theft related to Chase customer "G.G.," identified elsewhere in the record as Gerald Glen. Count VII charged Ward with aggravated identity theft related to Chase customer "C.H.," identified elsewhere in the record as Chris Hagler.

Ward attempted to plead guilty to all charges but the two counts of aggravated identity theft. The district court declined to accept the plea, reasoning that it could not accept a plea to the conspiracy charge without it effectively becoming an admission to the identity theft charges.

C.  The Trial

Ward proceeded to trial on all six counts. At the outset of the trial, Ward stipulated to his guilt on the conspiracy, bank fraud and access device charges, contesting only the aggravated identity theft charges.

Over Ward's objection, the district court permitted testimony from victims in addition to Gerald Glen and Chris Hagler about the theft of their identities in the scheme.

Specifically, the district court permitted the testimony of Rufus and Janey Brandt, a married couple from Wisconsin, Robert Bitter, and Kimberly Franklin. Ward and his co-conspirators had ordered replacement credit cards for the Brandts and for Bitter, and had used those cards to make sizeable purchases. Computer printouts bearing Franklin's personal information had been found during the execution of a search warrant at Ward's apartment. While no evidence was introduced that Franklin's account had been compromised, it was assumed that Ward obtained her personal information for purposes of stealing her identity.

Ward's objection to the testimony of the Brandts, Bitter and Franklin was premised on his contention that the testimony was relevant only to the conspiracy, bank fraud and access device charges to which he was admitting guilt, and was thus unduly prejudicial. The government responded by arguing that this testimony was important circumstantial evidence necessary to establish that Ward knew his victims to be real people, an element of aggravated identity theft. The district court overruled Ward's objection and permitted the additional victims to testify.

Glen, Hagler, Franklin, Bitter and Rufus and Janey Brandt all testified during the trial as to the theft of their identities. In its closing argument, while discussing the aggravated identity theft counts, the government contended that Ward knew Glen and Hagler to be real people, but also referred to other victims including the Brandts and Franklin, suggesting that Ward knew that they too were real people. With respect to Rufus Brandt, the government noted that "we saw Rufus Brandt's . . . Mileage Plus card. Real people have these rewards programs. . . . These are real people's credit cards." With respect to Franklin, the government reminded jurors that

"[y]ou met Kimberly Franklin. She told you that the Social Security number, the address, the driver's license, the DOB, on this email printout found at the defendant's home were all hers. That was her information that the defendant knew and had sitting in his apartment."

Following closing arguments, the district court instructed the jury. On Count VI, charging aggravated identity theft with respect to Gerald Glen, the district court instructed the jury as follows:

> Now, the defendant is charged in Count Six of the indictment with aggravated identity theft, in violation of Section 1028A of Title 18 of the United States Code. For the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt: One, the defendant knowingly transferred, possessed, or used without lawful authority a means of identification of another person, that is, a credit card account number; two, the defendant knew that the means of identification belonged to a real person; and, three, the defendant did so . . . during and in relation to committing bank fraud . . . .

The instructions on Count VII, charging aggravated identity theft with respect to Chris Hagler, were substantively identical.

At a sidebar discussion after the instructions, both parties expressed concern that the instructions for Counts VI and VII

did not identify the specific victim or the date on which the conduct took place, as alleged in the indictment:

> THE COURT: Do you have any comments or objections with regard to the instructions?
>
> [DEFENSE COUNSEL]: Your Honor, I have a concern in Count Six and Seven. It doesn't identify –
>
> [GOVERNMENT COUNSEL]: We have the same concern.
>
> [DEFENSE COUNSEL]: – the date of the offense or the actual credit card numbers possessed, so I would just ask that it identify that the defendant's charged in Count Six with committing this offense on or about a certain date.
>
> THE COURT: They'll have the indictment with them, and it's not necessary.
>
> [DEFENSE COUNSEL]: I'm very worried that they will look at this instruction, and the jury will think that it can consider uncharged conduct, and whether there's evidence that he might have known a different identity rather than one that's charged.
>
> THE COURT: It says Count Six, Count Seven. They can look at the indictment and see.

[GOVERNMENT COUNSEL]: Your Honor, our proposal was just to modify the second element, to add the victim's name for each count, to clarify.

[DEFENSE COUNSEL]: So that – it sounds like I would agree with that proposal, that is, a credit card account number belonging to Gerald Glen, for example.

[GOVERNMENT COUNSEL]: Or belonging to a real person, comma, Gerald Glen.

[DEFENSE COUNSEL]: Okay. That works, also.

THE COURT: All right. . . . It's all in the indictment, but we'll do that.

The district court later had a change of heart, indicating to counsel that no change would be made to the instructions:

THE COURT: And I've given second thought to what I'd indicated with regard to the instructions that go to Counts Six and Seven. I'm not going to change it. The jury will have [the indictment] and they can refer to it. That's the way we always do it. We refer to those counts. They'll look at them and that's it. I just wanted you to know that. If you both have objections, they're on the record. All right.

The jury returned a verdict of guilty on all counts.

## II. Standard of Review

When a defendant raises a constructive amendment claim before the district court, we review de novo. *United States v. Hartz*, 458 F.3d 1011, 1019 (9th Cir. 2006). However, where the defendant fails to object to the district court's jury instructions, a constructive amendment claim is reviewed for plain error. *Id.*

The government argues that Ward failed to preserve his constructive amendment objection because he did not specifically assert a violation of his Fifth Amendment right below. We conclude, however, that Ward objected at trial on the same basis that he now raises – that the instructions would improperly allow him to be convicted for conduct not charged in the indictment. At the post-instruction sidebar, defense counsel stated, "I'm very worried that they will look at this instruction, and the jury will think that it can consider uncharged conduct, and whether there's evidence that he might have known a different identity rather than one that's charged." In declining to modify the instructions, the district court later confirmed that, "[i]f you both have objections, they're on the record." Although defense counsel did not use the term "Fifth Amendment," the substance of the objection was patently clear. *See United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004) ("A specific objection provides the district court with an opportunity to address the error in the first instance and allows [the appeals court] to engage in more meaningful review.").

III.    Discussion

A.  Introduction

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ." U.S. Const. amend. V. "It is the exclusive prerogative of the grand jury finally to determine the charges, and once it has done so neither a prosecutor nor a judge can change the charging part of an indictment to suit [his or her] own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes." *United States v. Leichtnam*, 948 F.2d 370, 375–76 (7th Cir. 1991) (quoting *Ex parte Bain*, 121 U.S. 1, 10 (1887)) (alteration in original) (internal quotation marks omitted); *see also Stirone v. United States*, 361 U.S. 212, 216 (1960); *Hartz*, 458 F.3d at 1019–20. "If an indictment could be so lightly departed from, then the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says 'no person shall be held to answer,' [might] be frittered away until its value is almost destroyed . . . ." *Leichtnam*, 948 F.2d at 376 (quoting *Ex parte Bain*, 121 U.S. at 10) (alteration in original) (internal quotation marks omitted).

Objections that the trial court improperly instructed the jury about the contents of the indictment generally fall into one of two categories:  a constructive amendment or a variance.  "An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." *United States v. Von Stoll*, 726 F.2d

584, 586 (9th Cir. 1984) (quoting *United States v. Cusmano*, 659 F.2d 714, 718 (6th Cir. 1981)). A *variance*, on the other hand, "occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *Id.*

The line that separates a constructive amendment from a variance is not always easy to define, *United States v. Adamson*, 291 F.3d 606, 615 (9th Cir. 2002); *see also United States v. Antonakeas*, 255 F.3d 714, 722 (9th Cir. 2001), but characterizing an instruction as a constructive amendment typically mandates reversal, while "a variance requires reversal only if it prejudices a defendant's substantial rights." *Adamson*, 291 F.3d at 615 (quoting *United States v. Olson*, 925 F.2d 1170, 1175 (9th Cir. 1991) *abrogated in part by United States v. Cotton*, 535 U.S. 625, 630 (2002)).

B.  Variances

A variance involves a divergence between the allegations set forth in the indictment and the proof offered at trial. Where this divergence acts to prejudice the defendant's rights, the conviction must be reversed. For example, in *United States v. Tsinhnahijinnie*, the defendant was indicted for engaging in abusive sexual contact with a minor over a two-month period within the confines of an Indian reservation. 112 F.3d 988, 989 (9th Cir. 1997). The trial testimony, however, suggested that the defendant had perpetrated the sexual abuse over a significantly different period of time at locations both on and off the reservation. *Id.* at 990–91. We found the defendant's rights had been prejudiced by this variance, reasoning that federal jurisdiction was premised on the events having occurred on the reservation. *Id.* at 991.

A non-prejudicial variance, which occurs when divergence between the facts alleged in the indictment and those offered at trial is immaterial or otherwise does not prejudice a defendant, will not justify reversal. For example, in *Von Stoll*, the indictment charged the defendant with transporting in interstate commerce $10,000 that was taken from a Mr. McCallum. 726 F.2d at 585. The evidence presented at trial, however, showed that the defendant had met with McCallum and his partner, Mr. Hofer, and had taken the $10,000 from Hofer. *Id.* at 585–86. The jury charge allowed jurors to find the defendant guilty if they found that the $10,000 was taken from "the owner." *Id.* at 586. This Court found a non-prejudicial variance, reasoning that the identity of the victim was irrelevant to the defendant's culpability. *Id.* at 586–87.

This case does not involve a variance, because the allegations set forth in the indictment did not differ from the facts proven at trial. The trial evidence established that Ward appropriated the identities of Gerald Glen and Chris Hagler. Thus, the question before us is whether the district court's instruction resulted in a constructive amendment of the charges in Counts VI and VII.

C.  Constructive Amendments

A constructive amendment occurs "when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." *Id.* at 586 (quoting *Cusmano*, 659 F.2d at 718). The seminal case is *Stirone*, in which the defendant was indicted for extortion relating to interference with interstate shipments of sand. 361 U.S. at 213–14. Over defendant's objections, the district court admitted evidence

relating to his interference with interstate steel shipments, then instructed the jury that a finding of guilt could be premised on either the sand- or steel-related conduct. *Id.* at 214. The Supreme Court found that the district court had constructively amended the indictment by expanding the conduct for which the defendant could be found guilty beyond its bounds. *Id.* at 219.

Cases in this circuit finding constructive amendments follow a similar pattern. For example, in *Howard v. Daggett*, the indictment charged that the "[defendant] did knowingly and wilfully travel in interstate commerce for the purpose of promoting an unlawful activity, to-wit: prostitution, in that [defendant] did induce Lucretia Yvonne South and Dolores Nelson to engage in prostitution . . . ." 526 F.2d 1388, 1389 (9th Cir. 1975) (per curiam). The evidence introduced at trial, however, suggested that the defendant had relationships with prostitutes in addition to the two identified in the indictment. *Id.* at 1390. The trial court instructed the jury that in order to convict the defendant, the jury had to find that he had "the intent to or purpose to promote an unlawful activity, to-wit: prostitution," but did not specifically reference the two women named in the indictment. *Id.* at 1389. This Court reversed the conviction, reasoning that the supplemental instruction had constructively amended the indictment by permitting the defendant to be convicted for conduct not alleged in the indictment. *Id.* at 1390; *see also United States v. Dipentino*, 242 F.3d 1090, 1092–93 (9th Cir. 2001) (finding constructive amendment when jury was instructed that conviction could be based either on conduct alleged in indictment or uncharged conduct violating the same federal statute).

We have declined to find a constructive amendment, however, when the indictment simply contains superfluously specific language describing alleged conduct irrelevant to the defendant's culpability under the applicable statute. *See, e.g.*, *United States v. Garcia-Paz*, 282 F.3d 1212, 1216 (9th Cir. 2002); *Antonakeas*, 255 F.3d at 722; *Olson*, 925 F.2d at 1175–76. In such cases, convictions can be sustained if the proof upon which they are based corresponds to the offense that was clearly described in the indictment. A part of the indictment unnecessary to and independent of the allegations of the offense is considered to be "a useless averment." *United States v. Miller*, 471 U.S. 130, 136 (1985) (quoting *Ford v. United States*, 273 U.S. 593, 602 (1927)).

This Court has rejected constructive amendment claims when jury instructions diverge materially from the indictment, but when no evidence was introduced at trial that would enable the jury to convict the defendant for conduct with which he was not charged. In *Hartz*, for example, the defendant was indicted for use of a firearm during the robbery of a jewelry store. 458 F.3d at 1015–16. The indictment alleged that the defendant had used two specific weapons – a Smith and Wesson .357 and a Chinese model 9mm. The evidence at trial matched the allegations in the indictment, but a verdict form asked simply that the jury find whether the defendant brandished "a firearm." *Id.* at 1016. This Court declined to find a constructive amendment because the verdict form did not alter the behavior on which the defendant could be convicted, as no evidence was introduced that the defendant had used a weapon other than the two referenced in the indictment, and use of either firearm would have been sufficient to support conviction of the offense charged in the indictment. *Id.* at 1021.

Read together, these cases instruct that the determination of whether a constructive amendment has been effected requires sensitivity to both the jury instructions as a reflection of the indictment, and to the nature of the proof offered at trial. More specifically, when conduct necessary to satisfy an element of the offense is charged in the indictment and the government's proof at trial includes uncharged conduct that would satisfy the same element, we need some way of assuring that the jury convicted the defendant based solely on the conduct actually charged in the indictment. Typically, that assurance will be provided by jury instructions requiring the jury to find the conduct charged in the indictment before it may convict. If the jury instructions do not impose that limitation, however, the defendant's conviction could be based on conduct *not* charged in the indictment. That possibility results in a constructive amendment of the indictment, requiring reversal, because it "destroy[s] the defendant's substantial right to be tried only on charges presented in an indictment." *Stirone*, 361 U.S. at 217.

Applying that rationale here, we conclude that the district court constructively amended the indictment by permitting the jury to convict Ward on Counts VI and VII based on conduct not alleged in those counts. Ward was indicted for aggravated identity theft as to only Gerald Glen and Chris Hagler, and the identity of the victims was necessary to satisfy an element of the offense because aggravated identity theft requires proof that the victim was a real person. *See United States v. Maciel-Alcala*, 612 F.3d 1092, 1095–96 (9th Cir. 2010). But the jury heard testimony that Ward also victimized the Brandts, Robert Bitter, and Kimberly Franklin. Similarly, the government's opening and closing arguments referenced not just Glen and Hagler, but these other victims as well. Then, the jury was instructed that it could convict

Ward on Counts VI and VII if he stole the identity of "a real person," without further specificity.

On those facts, we simply cannot know the basis for the jury's aggravated identity theft convictions. The convictions might have been based on the conduct charged in the indictment, involving Glen and Hagler. But they could just as easily have been based on uncharged conduct involving the Brandts, Bitter, or Franklin. In light of that uncertainty, Ward may have been "convicted on a charge the grand jury never made against him," so a constructive amendment necessarily occurred here. *Stirone*, 361 U.S. at 219.

The government's arguments to the contrary are easily dispatched. The government contends that a constructive amendment requires affirmative representations by the trial court permitting a finding of guilt based on uncharged conduct, and in this case the district court merely omitted the names of the specific individuals named in the indictment. That contention, however, is squarely foreclosed by *United States v. Shipsey*, which held that the district court had constructively amended the indictment by omitting information from the jury instructions contained in the indictment. 190 F.3d 1081 (9th Cir. 1999). In *Shipsey*, the defendant was indicted for theft by false pretenses for having defrauded an ERISA pension fund by making "false and fraudulent pretenses, representations and promises" to certain third parties who then relied on the defendant's statements. *Id.* at 1084. The jury instructions, however, permitted the jury to convict the defendant if the jury merely found that the defendant had "willfully stole[n] or converted property to his own use," and did not specify a requirement that the defendant have used false and fraudulent pretenses, representations or promises, nor that the third parties must

have relied on the defendant's statements. *Id.* This Court found that by omitting these requirements from the jury instructions, the district court constructively amended the indictment. *Id.* at 1087.

Second, the government argues that because the jury had a copy of the indictment while deliberating, there is no risk it might have convicted Ward based on uncharged conduct. In the case the government relies upon, *United States v. Nixon*, 694 F.3d 623 (6th Cir. 2012), the defendant was indicted for fraud with respect to her employer's account with American Express Bank, which the indictment noted was FDIC-insured. *Id.* at 637–38. Evidence was introduced at trial about the defendant's theft of funds from the American Express account, but there was also evidence that the defendant had issued or altered checks from a separate account at a different bank. *Id.* The district court's instructions required that the jury find that the defendant had "knowingly executed a scheme to defraud a financial institution to obtain money" in order to convict her, but did not specify American Express Bank. *Id.* On appeal, the defendant argued that the jury might have convicted her based on the evidence regarding the other checks, but not on conduct related to American Express Bank. The Sixth Circuit disagreed, reasoning that the jury had a copy of the indictment while deliberating, and that there had been no evidence that the other bank was FDIC-insured, unlike American Express Bank. *Id.* at 638.

*Nixon* is inapposite for two reasons. First, because the defendant had not raised a constructive amendment objection at trial, *Nixon* applied only plain error review. *Id.* at 637. Second, *Nixon* emphasized that the jury instructions required a finding that the financial institution in question be FDIC-insured, limiting any potential for juror confusion. *Id.* at 638.

In this case, there is no analogous fact that would distinguish the victims named in Counts VI and VII from the other victims who testified at trial.

IV.      Conclusion

For the foregoing reasons, we conclude that the district court constructively amended the indictment when it declined to name the specific victims whose identities the indictment accused Ward of stealing. We therefore reverse Ward's conviction with respect to Counts VI and VII, and remand the matter to the district court for proceedings consistent with this opinion.

**REVERSED and REMANDED**.