NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAR 23 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ROBERT RUBEN ORNELAS,

Defendant-Appellant.

No. 17-50067

D.C. No. 8:14-cr-00183-CJC-1

MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted May 14, 2020
Pasadena, California

Before: COLLINS and LEE, Circuit Judges, and PRESNELL,** District Judge.

Over a seven-year period, Robert Ruben Ornelas repeatedly traveled to the

Philippines where he sexually abused two underage Filipino sisters, with the

connivance of their aunts, and produced images and videos of that abuse. Ornelas

was subsequently charged with two counts of engaging in illicit sexual conduct in a

foreign place in violation of 18 U.S.C. § 2423(c) (Counts One and Two); three

---

* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

** The Honorable Gregory A. Presnell, United States District Judge for the Middle
District of Florida, sitting by designation.

counts of production of child pornography outside of the United States in violation of 18 U.S.C. § 2251(c) (Counts Three, Four, and Five); and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2) (Counts Six and Seven). After a jury trial, Ornelas was convicted on all counts and sentenced to 190 years in prison. Ornelas timely appeals. We reject all of Ornelas's contentions, except that we remand for the limited purpose of determining whether there is a likelihood that the outcome at trial would have been different if certain materials sought in pretrial discovery had been disclosed.

1. The district court did not err in denying Ornelas's motion to suppress the evidence seized at a search of his home in June 2013.

a. Reviewing de novo, *see United States v. Shryock*, 342 F.3d 948, 975 (9th Cir. 2003), we conclude that the district court properly held that Ornelas failed to make the "substantial preliminary showing" required to necessitate a hearing to test the veracity of the affidavit that supported the search warrant of his home under *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). In arguing that a hearing was warranted, Ornelas relies on a brief declaration from his brother that purported to contradict some of that brother's statements to law enforcement that were recounted in the warrant affidavit. Ornelas also notes that the warrant affidavit, in recounting the brother's statement that a niece had accused Ornelas of molesting her in the 1990s, did not note that an investigation into that accusation was closed

2

on the grounds that the allegations were "unsubstantiated." Even assuming

*arguendo* that the warrant affidavit recklessly or intentionally misrepresented

(1) the brother's statements about a peeping-Tom allegation against Ornelas in

2010; (2) the contents of a photo album with nude pictures found in Ornelas's

room in the 1990s; or (3) the reliability of the niece's accusation of molestation (as

recounted by Ornelas's brother),[1] we hold that Ornelas failed to make a

"substantial preliminary showing" that these statements were "necessary to the

finding of probable cause." *Franks*, 438 U.S. at 155–56.

In deciding whether Ornelas carried his burden on this score, our task is to

first excise the alleged misrepresentations and insert the alleged omissions and then

"'determine[] whether the affidavit, once corrected and supplemented, establishes

probable cause.'" *United States v. Ruiz*, 758 F.3d 1144, 1148 (9th Cir. 2014)

(citation omitted). Following that procedure here, we conclude that the affidavit

would still amply have established probable cause. The brother's short declaration

did *not* contest the warrant affidavit's description of the brother's statements

---

[1] We reject out of hand Ornelas's suggestion that the warrant affidavit misleadingly failed to mention that the brother told the FBI that he thought Ornelas was stealing from him and their mother and that he did not have a good relationship with Ornelas. The warrant affidavit specifically mentioned that the brother thought Ornelas "was involved in fraudulent activity involving his mother's rental property." And it was obvious that the two did not have a good relationship given that the warrant affidavit disclosed that the "case came to light" only after the brother had contacted the FBI to report Ornelas's suspected involvement in child pornography.

recounting how he and his cousin had found on Ornelas's computer numerous images of child pornography, including images that the brother believed depicted Ornelas having sex with young girls. Nor did Ornelas contest, in seeking a *Franks* hearing, the warrant affidavit's recital of the corroborating statements made by the cousin, who reported that, "out of the thousands of images on [Ornelas's] computer, approximately thirty (30) percent were child pornography images" and that some of the images involved "children between the ages of two (2) and seven (7)." There was sufficient probable cause based on these unchallenged statements alone.

b. The district court also properly rejected Ornelas's contention that, because the brother and cousin had discovered Ornelas's large child pornography collection some 13 months before the warrant was sought, the information recounted in the warrant affidavit was too stale. Based on the warrant affidavit's description of his relatives' discovery of Ornelas's extensive collection of child pornography, including suspected images of him engaged in sex with minors, he was plainly a person "who view[s] minors as sexual objects," and the warrant affidavit specifically recounted the agent's conclusion, based on her training and experience, that such persons typically "keep and cherish" their collection and "rarely discard" the images. We have relied on precisely such reasoning in rejecting similar staleness challenges. *See United States v. Schesso*, 730 F.3d

1040, 1047 (9th Cir. 2013) (warrant sought 20 months after single incident of downloading child pornography); *United States v. Lacy*, 119 F.3d 742, 745–46 (9th Cir. 1997) (10-month lapse).

2.  Reviewing de novo, *see United States v. Ward*, 747 F.3d 1184, 1188 (9th Cir. 2014), we reject Ornelas's contention that the district court allowed a constructive amendment of the indictment, or impermissible variance from it, by permitting the Government to argue to the jury that it could convict Ornelas on Count One based on a sexual act that occurred before the conduct shown on the videotape associated with that count.

The victim in Count One ("J.J.") testified that Ornelas touched her breasts and vagina *before* getting into the shower with her and videotaping that shower. The videotape depicts Ornelas masturbating while, at his direction, J.J. washed her pubic area, and she then apparently penetrated her vagina with her finger. There was no constructive amendment of the indictment in allowing the jury to convict based on the pre-videotape conduct, because the touching of J.J.'s breasts and vagina fell squarely within the allegations of the indictment: it occurred within the specified dates; it involved J.J. (who was identified as "Minor Female #1" in the indictment); the touching of her breasts and vagina constitutes "illicit sexual conduct" within the meaning of the provision alleged in the indictment, 18 U.S.C. § 2423(f); and it occurred in the Philippines. Nothing in the terms of the

5

indictment specified that the alleged conduct was limited to what was depicted on a particular video; indeed, no videotape is even mentioned in Count One of the indictment. The jury instructions likewise did not depart from the allegations of the indictment. Because the "'terms of the indictment'" were not "'altered, either literally or in effect,'" there was no constructive amendment. *Ward*, 747 F.3d at 1189 (citation omitted); *see also United States v. Adamson*, 291 F.3d 606, 616 (9th Cir. 2002) (no constructive amendment where "the particular [conduct] proved at trial supported the same crime" alleged in the indictment).

Ornelas's claim that there was nonetheless an impermissible variance is based on the representations made by the Government in response to Ornelas's motion for a bill of particulars. In particular, Ornelas points to a footnote in the Government's response, which states that the Government "has provided defense counsel with a list of the victims' initials and years of birth and relevant video files location/path for Counts One and Two," and that "*[t]he video files depict the illicit sexual conduct*" (emphasis added). This statement, Ornelas contends, required the Government to rely *only* on the conduct depicted in the video, to the exclusion of any additional conduct immediately preceding the videotape. *See Adamson*, 291 F.3d at 610, 616 (finding impermissible variance in part because, at hearing on motion for a bill of particulars, Government had insisted that only a particular type of alleged misrepresentation was at issue). But Ornelas overlooks the fact that the

italicized statement is immediately followed by a citation of the referenced letter, which was attached as an exhibit and which explicitly stated the Government's view that, in providing this list, it was "not required to limit its proof at trial to any single image/video of child pornography from the designated hard drives." While the situation might have been different had the Government relied on sexual conduct from a completely different episode on a different day, Ornelas can hardly claim "unfair surprise" from being confronted with testimony concerning pre-videotape sexual conduct that was part of the *same episode* that included the depicted shower. *See United States v. Lopez-Gonzalez*, 183 F.3d 933, 935 (9th Cir. 1999).

Because the jury could thus properly consider the pre-videotape illicit sexual conduct, the evidence at trial was sufficient to sustain Ornelas's conviction on Count One, even assuming that he is correct that the videotape does not depict "illicit sexual conduct" as defined in 18 U.S.C. § 2423(f) and in the jury instructions.

3. Counts Three, Four, and Five charged Ornelas with producing child pornography outside the United States and then transporting it into the United States, in violation of 18 U.S.C. § 2251(c)(1), (c)(2)(B). With respect to these counts, the district court gave an aiding-and-abetting instruction that permitted the jury to find that some other person, such as one of the victims' aunts, committed

this offense and that Ornelas merely aided and abetted its commission.[2] Ornelas contends that the instruction misdescribed the intent element because it did not make clear that Ornelas's intent had to extend, not only to the production of the child pornography, but also to its transportation into the United States. "We review de novo whether the district court's jury instructions misstated or omitted an element of the charged offense and review the district court's formulation of jury instructions for abuse of discretion." *United States v. Chi Mak*, 683 F.3d 1126, 1133 (9th Cir. 2012). We find no prejudicial error.

Ornelas contends that the aiding-and-abetting instruction was misleading because it stated that Ornelas had to act "with the intent to facilitate *production* of child pornography outside the United States" (emphasis added), and it did not mention the subsequent *transportation* of that material into the United States. He argues that, by failing to make clear that the requisite intent had to extend to the transportation element, the instruction was deficient under *Rosemond v. United States*, 572 U.S. 65 (2014). Ornelas reads the quoted language out of context. *See United States v. Rodriguez*, 971 F.3d 1005, 1012 (9th Cir. 2020) ("Jury instructions

---

[2] Ornelas does not dispute that there was an adequate factual basis to permit the jury to conclude that one of the aunts both "persuade[d], induce[d], entice[d], or coerce[d]" the nieces to engage in sexually explicit conduct "for the purpose of producing any visual depiction of such conduct" and "transport[ed] such visual depiction to the United States . . . by any means." 18 U.S.C. § 2251(c)(1), (c)(2)(B).

8

must be evaluated 'as a whole, and in context,' rather than in piecemeal." (citation omitted)).  Prior to listing the elements of aiding and abetting, the instruction stated that Ornelas could "be found guilty of production of child pornography outside the United States *as charged in Counts Three, Four, and Five*, even if the defendant personally did not commit the act or acts constituting the crime" (emphasis added).  That phrasing, in turn, would most reasonably be understood as a cross-reference to the instructions for Counts Three, Four, and Five, which define the elements of the crime of "production of child pornography outside the United States" and which unambiguously include the transportation element.  Read as a whole, the instructions thus required that Ornelas have the intention to facilitate both the production of the child pornography and its transfer into the United States.

Ornelas contends that the jury's mid-deliberation question concerning the aiding-and-abetting instruction confirms that the instruction was prejudicially misleading.  We disagree.  In fact, the question confirms that the jury understood that the aiding-and-abetting instruction clearly referred back to the elements of Counts Three, Four, and Five as stated in the earlier instructions, because the question asked whether a finding that Ornelas had aided and abetted the "transport of materials in Counts 3, 4 [and] 5 [was] sufficient to convict. (say yes to *the third prong in each*)" (emphasis added).  And in responding to the note, the court instructed the jury that, as to the "second element" of aiding and abetting—*i.e.*,

9

whether Ornelas "aided, counseled, commanded, induced or procured" the commission of at least one element of the predicate offense—the jury could rely on "aiding and abetting the transport of the visual depictions that are charged in Counts Three, Four, and Five." Nothing in this exchange suggests that the aiding-and-abetting instruction permitted the jury to convict Ornelas without finding that he also intended to facilitate the transportation.

4. Ornelas argues that, during the testimony of the main chain-of-custody witness, the district court abused its discretion in allowing testimony and evidence alluding to other victims. The Government argues that some of these objections were not properly preserved and should be reviewed only for plain error, but we need not resolve that issue. Even assuming that the abuse-of-discretion standard applies, there is no basis for reversal. The challenged testimony helped to explain, *inter alia*, how the agents conducted an initial review of CDs that had been seized from Ornelas's house at the local office of the Department of Homeland Security ("DHS"); how the witness had labeled CDs he reviewed; that the large volume of materials seized made it challenging to sort; why the witness had removed evidence from DHS's custody, booked it into the Orange County Sheriff's Office, and then turned it over to the Orange County Regional Computer Forensics Lab for examination; and how the witness was able to tie a particular CD to Ornelas. The details about how and why the agents handled the materials in the way that they

did helped to present a complete picture of the chain of custody, and it was not an abuse of discretion to admit that testimony and evidence even if some of those details underscored the concern that Ornelas may have had other victims. *See* FED. R. EVID. 403, 404(b); *United States v. Loftis*, 843 F.3d 1173, 1176–78 (9th Cir. 2016); *United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991).

We also find no plain error in the admission of testimony, from the same witness, as to his understanding of "child pornography." The testimony helped to explain how the witness chose to label the CDs that he reviewed in the way that he did, and its admission was therefore not plainly erroneous. And given that the jury was properly instructed on the legal definition of child pornography at the close of the case, there is no basis to conclude that the witness's statement prejudicially affected the outcome in a way that "'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Olano*, 507 U.S. 725, 736 (1993) (citation omitted).

5. Shortly before trial, one of the persons on the Government's witness list, who had been involved in the execution of the search warrant, committed suicide. The Government filed certain materials concerning the suicide *ex parte* and *in camera* in the district court, together with a memorandum explaining why, in the Government's view, the materials did not need to be disclosed to the defense either under Federal Rule of Criminal Procedure 16 or under *Brady/Giglio*. The district

court ruled that no disclosure was required, and Ornelas stated on the record that he wanted his "objections noted regarding the no disclosure decision," which he understood was based on the conclusion that "there's nothing to disclose regarding it as it relates to this case." The court agreed that the objection was "duly noted and it's preserved."[3]

As the district court recognized, Ornelas was operating "in a vacuum," because he had not seen the materials that had been submitted *in camera*. Having reviewed the materials, we conclude that the district court abused its discretion in failing to at least order that the materials be disclosed to defense counsel on an attorney's-eyes-only basis. *See United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010) (discovery rulings are reviewed for abuse of discretion). Materiality is a "'low threshold,'" requiring only that the information "may assist [Ornelas] in formulating a defense, including leading to admissible evidence." *United States v. Soto-Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016) (citation omitted). We think that, in particular, the information contained on page 99 of the Government's *in camera*

---

[3] We therefore reject the Government's suggestion that we should either not review, or review only for plain error, whether the materials should have been disclosed under Rule 16. Ornelas's oral objection to the denial of disclosure was sufficient to preserve the issue under Federal Rules of Criminal Procedure 12(b)(3)(E) and 47(b). And Ornelas's objection that the court had erred in concluding that there was nothing to disclose "as it relates to this case" was sufficient to preserve a challenge to the materiality ruling that the district court necessarily made after being presented with the Government's memorandum.

excerpts of record confirms that this low standard is met. However, in the current procedural posture, good cause exists, as Ornelas himself suggests in his brief, for an order provisionally limiting disclosure of the documents to only defense counsel and not to Ornelas himself. *See* FED. R. CRIM. P. 16(d).

Under these circumstances, we remand the case to the district court with instructions to require disclosure of the *in camera* materials on an attorney's-eyes-only basis, and then to determine, after any appropriate additional procedures or disclosures, whether Ornelas can "show a likelihood that the outcome would have been different if the material had been disclosed." *Stever*, 603 F.3d at 754. If the district court determines that disclosure of the documents "'probably would have changed the outcome' of the trial," then the court must grant Ornelas's request for a new trial. *United States v. Doe*, 705 F.3d 1134, 1152 (9th Cir. 2013) (citation omitted). If, on the other hand, the district court determines that the failure to disclose the documents was harmless, Ornelas's conviction stands. *See id.*

6. Finally, Ornelas argues there was cumulative error. Because we have found only one error (which on remand may not prove prejudicial), the cumulative-error doctrine does not apply. *See United States v. Laurienti*, 611 F.3d 530, 551 (9th Cir. 2010).

**AFFIRMED IN PART AND REMANDED.**