**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 26 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-10277 |
| Plaintiff-Appellee, | D.C. No. 2:16-cr-01300-DLR-1 |
| v. | |
| MICHAEL SEAN GRAHAM, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Douglas L. Rayes, District Judge, Presiding

Argued and Submitted February 7, 2024
Phoenix, Arizona

Before: BERZON, HURWITZ, and JOHNSTONE, Circuit Judges.

Michael Graham appeals his conviction and sentence on 15 counts of wire

and mail fraud involving a foreign-currency investment scheme. We affirm.

1.      Graham first argues that the district court violated Federal Rule of

Criminal Procedure 11(c)(1) when it rejected a plea agreement containing a 20-

month sentence cap. Because Graham did not raise the alleged Rule 11 violation

---

*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

1

before the district court, and because such an objection was not "unlikely or futile," we review for plain error. *United States v. Kyle*, 734 F.3d 956, 962 (9th Cir. 2013).

The district court did not improperly interject itself into the plea negotiation process. *Id.* at 963. Contrary to Graham's assertions, the court did not state that it would only accept a plea agreement without a cap or otherwise "comment[] on the hypothetical agreements it would or would not accept." *Id.* (quoting *United States v. Crowell*, 60 F.3d 199, 203 (5th Cir. 1995)). Instead, it "provide[d] individualized reasons for rejecting the agreement, based on the specific facts and circumstances presented," *In re Morgan*, 506 F.3d 705, 711 (9th Cir. 2007), and informed Graham that he could either withdraw from the plea agreement, which would have allowed for further plea negotiations, or plead guilty without the cap. Accordingly, the court did not commit plain error in rejecting the agreement.

2.      Graham next alleges that the district court violated his confrontation clause and due process rights by requiring witnesses to testify while masked during some, but not all, of their testimony. Because Graham did not object to the masking policy at trial, we review for plain error. *United States v. Olano*, 507 U.S. 725, 732 (1993).

The district court did not plainly err. Considering that the trial took place during the COVID-19 pandemic, the masking requirement was "necessary to further an important state interest," namely, the health of trial participants. *United*

2

*States v. De Jesus-Casteneda*, 705 F.3d 1117, 1120 (9th Cir. 2013). And the "reliability of the [witnesses'] testimony was otherwise assured" because they were present in the courtroom, testified under oath, were subject to cross-examination, unmasked during some of their testimony, and their demeanor and body language were visible. *Id.* at 1121. Nor did the masking requirement infringe upon Graham's due process rights. *Id.*

3.      Graham contends that the district court violated his constitutional rights by reinstating Count 21, a mail fraud count, which the government had mistakenly moved to dismiss before jury empanelment. Because Graham objected to the reinstatement of the count, we review de novo. *United States v. Berry*, 683 F.3d 1015, 1020 (9th Cir. 2012); *United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005); *United States v. Hartz*, 458 F.3d 1011, 1019 (9th Cir. 2006).

Any error in reinstating Count 21 was harmless. *See United States v. Tuyet Thi-Bach Nguyen*, 565 F.3d 668, 675 (9th Cir. 2009). Graham was eventually acquitted on that count. He has not pointed to any specific impact the introduction of evidence on Count 21 could have had on the counts for which he was convicted.

Nor did the reinstatement of Count 21 constitute double jeopardy. The count was dismissed without prejudice before the jury was empaneled. Graham had therefore not yet been placed in jeopardy on that count when it was reinstated. *United States v. Bernhardt*, 840 F.2d 1441, 1447 (9th Cir. 1988).

3

Finally, whether or not the reinstatement of Count 21 constituted an improper constructive amendment of the indictment, there was no injury to Graham as a result, as he was not convicted of the charge. *United States v. Ward*, 747 F.3d 1184, 1189 (9th Cir. 2014) (noting that a finding of constructive amendment "typically mandates reversal").

4. Graham also challenges the sufficiency of the evidence underlying his convictions. Because he did not renew his motion for acquittal at the close of evidence, we review his challenge for plain error or to prevent a miscarriage of justice. *United States v. Barragan,* 263 F.3d 919, 922 (9th Cir. 2001). We conclude that, considering the evidence in the light most favorable to the prosecution, a rational trier of fact could find the essential elements of the crimes were proven beyond a reasonable doubt. *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc).

Counts 2, 5, 6, 9, 10, 14, 15, 18, 19, and 20 concern the transfer of funds from Graham's business account to a personal bank account. The government was not required to prove that all the funds in the business account could be "traced back to a particular unlawful activity." *United States v. Lazarenko*, 564 F.3d 1026, 1036 (9th Cir. 2009). Because at least some of the funds in the business account were deposited by individuals who testified as to false statements by Graham that induced them to invest, and who later received falsified statements misrepresenting

4

their earnings, a reasonable juror could conclude that transfers out of that account were "in furtherance" of the fraud. *Id.*

Counts 7, 8, 12, 22, and 24 concern funds transferred by two investor-victims to Graham. Although the government did not prove exactly how those funds were used, it did show that the funds were obtained through material misrepresentations and that at least some of the money in Graham's business account was diverted to personal use. *See United States v. Woods*, 335 F.3d 993, 998–99 (9th Cir. 2003). That evidence is sufficient for a reasonable juror to conclude that the transfers were "incident to the execution of the scheme." *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013) (quoting *United States v. Lo*, 231 F.3d 471, 478 (9th Cir. 2000)).

*5.* Finally, Graham argues that the district court erred in ordering restitution for losses incurred by Sue Irelan, Dan Hill, Christopher York, Bruce and Elaine Knutson, Donald and Alice Schoening, and Dan Sherman. "We review a restitution order for an abuse of discretion, provided that it is within the bounds of the statutory framework. Factual findings supporting an order of restitution are reviewed for clear error. The legality of the order is reviewed de novo." *United States v. Thomsen*, 830 F.3d 1049, 1064 (9th Cir. 2016) (cleaned up).

Because an element of mail and wire fraud is a "scheme," restitution is not limited to losses caused by the charged or convicted offenses. *Id.* at 1065–66. The

5

government presented sufficient evidence at sentencing to show by a preponderance of the evidence that each individual was "directly harmed by the defendant's criminal conduct in the course of the scheme." 18 U.S.C. § 3663A(a)(2).

Accordingly, the district court did not abuse its discretion in entering the restitution order.

**AFFIRMED.**