NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

AUG 7 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SASSI MIZRAHI, AKA Sasson Mizrahi,

Defendant - Appellant.

No. 23-4033

D.C. No.
2:19-cr-00415-CJC-2

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted April 10, 2025
Pasadena, California

Before: BADE and SUNG, Circuit Judges, and SIMON, District Judge.[**]

Defendant-Appellant Sassi Mizrahi ("Mizrahi") appeals his conviction and

sentence for five counts of wire fraud in violation of 18 U.S.C. § 1343. We have

jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Michael H. Simon, United States District Judge for the
District of Oregon, sitting by designation.

1.      Mizrahi challenges the sufficiency of the evidence on Counts 1 through 4. He does not argue that there was insufficient evidence of a fraudulent scheme. Instead, he argues that there was insufficient evidence to support his conviction on Counts 1 through 4 because those counts alleged that J.B., B.N., E.S. and K.S.V. were victims of the fraud, but they did not testify at trial. We review de novo a trial court's denial of a motion for acquittal based on insufficiency of the evidence, *United States v. Sineneng-Smith*, 982 F.3d 766, 776 (9th Cir. 2020), and we reject Mizrahi's argument.

First, during its case-in-chief, the government presented sufficient evidence of the elements of wire fraud. *See United States v. Miller*, 953 F.3d 1095, 1101–03 (9th Cir. 2020) (discussing elements of wire fraud); *see also Kousisis v. United States*, 605 U.S. ----, 145 S. Ct. 1382, 1391 (2025). The government presented an FBI Agent's testimony about Mizrahi's participation in a Ponzi scheme and affinity fraud. Although money from the victims was paid into an investment company owned and run by Mizrahi's brother, Motty Mizrahi,[1] several victims testified that Mizrahi told them that he was Motty's partner and a co-owner of the investment company. In addition, the government presented evidence that Mizrahi

---

[1] Co-defendant Motty pleaded guilty shortly before trial and did not testify for the government. Instead, he was called by the defense. Accordingly, we do not consider Motty's testimony when evaluating the motion for judgment of acquittal made at the conclusion of the government's case-in-chief.

encouraged victims to invest more money, discouraged them from withdrawing their investments, assured them that he was personally "overseeing everything," and falsely told investors that their money was "safe." He also ghostwrote emails for Motty to respond to investors' inquiries about their money, including telling them that if they notified the authorities Motty would not try to return their money. Further, many victims were shown monthly statements that falsely displayed that their investments were producing high yields.

Second, there was sufficient evidence to show that the interstate wire transactions involving the funds invested by J.B., B.N., E.S., and K.S.V. were used to carry out an essential part of the fraudulent scheme. When, as here, the government establishes the existence of a scheme to defraud, it need show only that "use of a wire '[wa]s a part of the execution of the fraud.'" *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013) (quoting *Kann v. United States*, 323 U.S. 88, 95 (1944)).

An FBI Agent testified that J.B., B.N., E.S., and K.S.V. were "identified investor[s]" in the scheme. Further, all four wire transactions entered the bank account used in the scheme when that account had a balance of less than $1,000, and that money was then immediately used partially to repay previous investors. A reasonable jury could conclude that these wire transfers were an integral part of the execution of the scheme because repaying prior investors is necessary to maintain

their trust. *See Schmuck v. United States*, 489 U.S. 705, 712 (1989) ("Schmuck's [mail fraud] scheme would have come to an abrupt halt if the dealers . . . had lost faith in Schmuck . . . .").[2]

2. Mizrahi also argues that there was insufficient evidence to support his conviction for wire fraud in Count 1 because it was based on the "post-deposit" clearing of a check. He concedes that he did not preserve this argument in the district court but asserts that the court plainly erred. We reject Mizrahi's argument. Count 1 alleges that an interstate wire was used to transfer $100,000 from J.B.'s account to an account used as part of the scheme. The following day, that account

---

[2] Mizrahi argues that because the First Superseding Indictment and the verdict form referred to J.B. as a "victim" and B.N., E.S., and K.S.V. as "victim-investors," the government must prove that the interstate wire transactions alleged in Counts 1 through 4 were more than transactions in furtherance of the scheme to defraud; the government must prove that J.B., B.N., E.S. and K.S.V. were defrauded. The government argues that the evidence that other persons were misled was at most a non-prejudicial variance, even if there was no evidence that J.B., B.N., E.S., or K.S.V. themselves were deceived. We agree. "A variance involves a divergence between the allegations set forth in the indictment and the proof offered at trial. Where this divergence acts to prejudice the defendant's rights, the conviction must be reversed." *United States v. Ward*, 747 F.3d 1184, 1189–90 (9th Cir. 2014). "A non-prejudicial variance, which occurs when divergence between the facts alleged in the indictment and those offered at trial is immaterial or otherwise does not prejudice a defendant, will not justify reversal." *Id.* at 1190. Here, Mizrahi did not argue to the district court, and does not contend on appeal, that there was any unfair prejudice. Thus, there is at most a non-prejudicial variance. *See id.* (discussing *United States v. Von Stoll*, 726 F.2d 584, 585–87 (9th Cir. 1984) (explaining that when an indictment charged the defendant with defrauding one person, while the evidence at trial showed that he defrauded another person, there was a non-prejudicial variance that did not require reversal)).

was used to pay an earlier investor. This evidence is sufficient for a reasonable jury to conclude that the wire alleged in Count 1 was essential to the continuation of the scheme because it enabled Mizrahi and Motty to repay a previous investor in the scheme and to perpetuate the scheme. *See Schmuck*, 489 U.S. at 712.

3. Mizrahi challenges the sufficiency of the evidence on Count 5 on the ground that it was based on an email that did not seek additional funds. This argument also fails. The email assured victim L.M. that the "funds" were "safe," and "not missing, lost, or stolen," and advised that if L.M. contacted the authorities, L.M. would "not be able to get any funds." Wires or "[m]ailings occurring after receipt of the goods obtained by fraud are within the statute if they 'were designed to lull the victims into a false sense of security,'" or "'postpone their ultimate complaint to the authorities.'" *United States v. Lane*, 474 U.S. 438, 451–52 (1986) (quoting *United States v. Maze*, 414 U.S. 395, 403 (1974)). Here, the email served both purposes.

4. Mizrahi argues that the district court's jury instruction on the first element of wire fraud was plain error. *See United States v. Conti*, 804 F.3d 977, 981 (9th Cir. 2015) (explaining that plain error review applies to unobjected-to instructional error). This argument fails. The district court instructed that wire fraud requires that "[t]he defendant knowingly participated in or devised a scheme or plan to defraud or a scheme or plan for obtaining money or property by means

of false or fraudulent pretenses, representations, promises, or omitted facts." In *United States v. Miller*, we concluded that it was error for the court to instruct the jury that intent to defraud meant the intent to "deceive *or* cheat." 953 F.3d at 1101–03 (emphasis added). We determined that the error was harmless, however, because the court gave an additional instruction that was nearly identical to the one that Mizrahi challenges here. *Id.* at 1103.

Jury instructions, even if imperfect, are not a basis for overturning a conviction absent a showing that they prejudiced the defendant. *United States v. Christensen*, 828 F.3d 763, 786 (9th Cir. 2015). Here, even if there was instructional error, Mizrahi has not shown prejudicial error that impacted his "substantial rights" considering the evidence that the purpose of the scheme was to obtain money, including to use to pay other investors to perpetuate the scheme. The district court also instructed that intent to defraud means the "intent to deceive and cheat," and during closing argument, the prosecutor reminded the jury of this instruction and argued that Mizrahi intended to deceive and cheat the investors out of their money. *See United States v. Becerra*, 939 F.3d 995, 999 (9th Cir. 2019).

5.    Mizrahi argues that the district court plainly erred by giving both a deliberate ignorance and a vicarious liability instruction together with its instruction that to prove Mizrahi's guilt, the government must prove both that Mizrahi participated in or devised a scheme to defraud and that he acted with the

intent to defraud. In the district court, Mizrahi objected to the deliberate indifference and vicarious liability instructions separately. But Mizrahi did not present the argument he makes here, that these two instructions were improper because they dilute the knowledge requirement when given in combination. Because he did not raise that argument below, we review this issue for plain error. *See* FED. R. CRIM. P. 30(d). Mizrahi does not cite any case authority for the proposition that giving both a deliberate ignorance instruction and a co-schemer vicarious liability instruction in the same trial is erroneous, and we are aware of none. Thus, there can be no error that was plain. *See United States v. De La Fuente*, 353 F.3d 766, 769 (9th Cir. 2003) ("An error cannot be plain where there is no controlling authority on point.").

6.      Mizrahi challenges the district court's determination of the fraud loss attributable to him under 18 U.S.S.G. § 2B1.1(b)(1). The district court applied an 18-level enhancement under U.S.S.G. § 2B1.1(b)(1)(J) based on a loss amount that exceeded $3.5 million. Mizrahi argues there was "no evidence that [he] had joined his brother's fraud scheme before 2017 at the earliest," and thus he should not be held responsible for the entire loss. But the government presented evidence that, as early as August 2014, Motty told investors that Mizrahi was his partner. In addition, Mizrahi called Motty as his only witness, and the government elicited testimony that Motty held out Mizrahi as his partner as early as 2013. Further, the

district court reasonably concluded that all losses were foreseeable to Mizrahi after he started recruiting new investors and reassuring unpaid earlier investors. Thus, the district court did not err in determining the loss amount for purposes of calculating Mizrahi's advisory sentencing guideline range. *See United States v. Harris*, 999 F.3d 1233, 1235 (9th Cir. 2021) (explaining that we review the district court's factual findings at sentencing for clear error).

7.      Mizrahi argues for the first time on appeal that he is entitled to a two-level zero-point offender reduction under U.S.S.G. § 4C1.1, which took effect shortly before his November 2023 sentencing. That provision, however, applies only when a defendant has no criminal-history points and meets other specified criteria, including, as relevant here, that "the defendant did not personally cause substantial financial hardship." U.S.S.G. § 4C1.1(a)(6). Mizrahi argues that he did not personally cause substantial financial hardship to M.E. At most, however, Mizrahi presents a factual dispute on this point, and that is insufficient to show plain error. *See United States v. Zhou*, 838 F.3d 1007, 1011 (9th Cir. 2016) ("[A]n error that hinges on a factual dispute is not 'obvious' as required by the 'plain error' standard."). In addition, Mizrahi is ineligible for this reduction if he personally caused substantial financial hardship to any person, U.S.S.G. § 4C1.1(a)(6). There was ample evidence at trial to show that Mizrahi personally caused substantial financial hardship to other victim-investors. Thus, the district

court did not plainly err by declining to apply a two-level reduction under U.S.S.G. § 4C1.1.

8. Mizrahi argues that the district court erred by applying sentencing enhancements and ordering restitution based on facts that were not alleged in the indictment nor found by the jury, in violation of his rights under the Fifth and Sixth Amendments. Mizrahi acknowledges that we have previously rejected this argument. *See, e.g., United States v. Rodriguez*, 851 F.3d 931, 948 (9th Cir. 2017) (imposing sentencing enhancements); *United States v. Green*, 722 F.3d 1146, 1148–51 (9th Cir. 2013) (awarding restitution). Nevertheless, he seeks to preserve this argument. He also asks us to recommend en banc reconsideration of our decision in *United States v. Fitch*, 659 F.3d 788 (9th Cir. 2011), which concerns this issue. Mizrahi's argument is preserved, but we decline his invitation to recommend en banc reconsideration of *Fitch*, *Rodriguez*, or *Green*.

**AFFIRMED.**